**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF SOUTH CAROLINA - GREENVILLE**

RECEIVED
USDC, CLERK GREENVILLE, SC
2019 OCT 15  AM 10: 49

LARRY GOLDEN,

Plaintiff,

V.

(1) APPLE INC.
(2) SAMSUNG ELECTRONICS, USA
(3) LG ELECTRONICS, USA, INC.
(4) QUALCOMM INC.
(5) MOTOROLA SOLUTIONS INC.
(6) PANASONIC CORPORATION
(7) AT&T INC.
(8) VERIZON CORPORATE SERVICES
GROUP
(9) SPRINT CORPORATION
(10) T-MOBILE USA, INC.
(11) FORD GLOBAL TECHNOLOGIES,
LLC
(12) FAIRWAY FORD LINCOLN OF
GREENVILLE
(13) GENERAL MOTORS COMPANY
(14) KEVIN WHITAKER CHEVROLET
(15) FCA US LLC
(16) BIG O DODGE CHRYSLER JEEP
RAM

Defendants.

CASE NO: 6:19-cv-2557-DCC-KFM

**JURY TRIAL DEMANDED**

October 14, 2019

## AMENDED **COMPLAINT FOR PATENT INFRINGEMENT**

This is an action of patent infringement in which plaintiff, Larry Golden

("Golden"), complains against defendants, Apple Inc. ("Apple"), Samsung

Electronics, USA ("Samsung"), LG Electronics, USA, Inc. ("LG"), Qualcomm

Inc. ("Qualcomm"), Motorola Solutions Inc. ("Motorola"), Panasonic Corporation

("Panasonic"), AT&T Inc. ("AT&T"), Verizon Corporation Services Group

("Verizon"), Sprint Corporation ("Sprint"), T-Mobile USA, Inc. ("T-Mobile"),

Ford Global Technologies, LLC ("Ford"), Fairway Ford Lincoln of Greenville

("Fairway Ford"), General Motors Company ("GM"), Kevin Whitaker Chevrolet

("Whitaker Chevrolet"), FCA US LLC ("FCA"), and Big O Dodge Chrysler Jeep

Ram ("Big O") as follows:

## THE PARTIES

1.      Plaintiff Larry Golden is a citizen of South Carolina and has a

principal place of business and residence at 740 Woodruff Road, #1102,

Greenville, S.C. 29607.

2.      On information and belief, Apple is a California corporation with a

principal place of business at 1 Infinite Loop, Cupertino, CA 95014 and does

business in this judicial district by, among other things, committing jointly, directly

and/or indirectly the tort of patent infringement giving rise to this complaint. Apple

may be served at its principal place of business at 1 Infinite Loop, Cupertino, CA

95014.

3.      On information and belief, Samsung is a New Jersey corporation with

a principal place of business at 85 Challenger Rd. Ridgefield Park, New Jersey

07660 and does business in this judicial district by, among other things,

2

committing jointly, directly and/or indirectly the tort of patent infringement giving rise to this complaint. Samsung may be served at its principal place of business at 85 Challenger Rd. Ridgefield Park, New Jersey 07660.

4.      On information and belief, LG is a New Jersey corporation with a principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632 and does business in this judicial district by, among other things, committing jointly, directly and/or indirectly the tort of patent infringement giving rise to this complaint. LG may be served at its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

5.      On information and belief, Qualcomm is a California corporation with a principal place of business at 5775 Morehouse Drive, San Diego, CA 92121 and does business in this judicial district by, among other things, committing jointly, directly and/or indirectly the tort of patent infringement giving rise to this complaint. Qualcomm may be served at its principal place of business at 5775 Morehouse Drive, San Diego, CA 92121.

6.      On information and belief, Motorola is an Illinois corporation with a principal place of business at 500 W Monroe Street, Suite 4400, Chicago, IL 60661 and does business in this judicial district by, among other things, committing jointly, directly and/or indirectly the tort of patent infringement giving

rise to this complaint. Motorola may be served at its principal place of business at 500 W Monroe Street, Suite 4400, Chicago, IL 60661.

7. On information and belief, Panasonic is a New Jersey corporation with a principal place of business at Two Riverfront Plaza, 828 McCarter Hwy, Newark, NJ 07102 and does business in this judicial district by, among other things, committing jointly, directly and/or indirectly the tort of patent infringement giving rise to this complaint. Panasonic may be served at its principal place of business at Two Riverfront Plaza, 828 McCarter Hwy, Newark, NJ 07102.

8. On information and belief, AT&T is a Texas corporation with a principal place of business at 208 S. Akard St. Dallas, TX 75202 and does business in this judicial district by, among other things, committing jointly, directly and/or indirectly the tort of patent infringement giving rise to this complaint. AT&T may be served at its principal place of business at 208 S. Akard St. Dallas, TX 75202.

9. On information and belief, Verizon is a New Jersey corporation with a principal place of business at 295 N. Maple Ave. Basking Ridge, NJ 07920 and does business in this judicial district by, among other things, committing jointly, directly and/or indirectly the tort of patent infringement giving rise to this complaint. Verizon may be served at its principal place of business at 295 N. Maple Ave. Basking Ridge, NJ 07920.

10. On information and belief, Sprint is a Kansas corporation with a principal place of business at 6200 Sprint Pkwy. Overland Park, KS 66251 and does business in this judicial district by, among other things, committing jointly, directly and/or indirectly the tort of patent infringement giving rise to this complaint. Sprint may be served at its principal place of business at 6200 Sprint Pkwy. Overland Park, KS 66251.

11. On information and belief, T-Mobile is a Washington corporation with a principal place of business at 12920 SE 38th St. Bellevue, WA 98006 and does business in this judicial district by, among other things, committing jointly, directly and/or indirectly the tort of patent infringement giving rise to this complaint. T-Mobile may be served at its principal place of business at 12920 SE 38th St. Bellevue, WA 98006.

12. On information and belief, Ford is a Michigan corporation with a principal place of business at Fairlane Plaza South, Suite 800, 330 Town Center Drive, Dearborn, Michigan 48126 and does business in this judicial district by, among other things, committing jointly, directly and/or indirectly the tort of patent infringement giving rise to this complaint. Ford may be served at its principal place of business at Fairlane Plaza South, Suite 800, 330 Town Center Drive, Dearborn, Michigan 48126.

13.    On information and belief, Fairway Ford is a South Carolina corporation with a principal place of business at 2323 Laurens Road, Greenville, SC 29607and does business in this judicial district by, among other things, committing jointly, directly and/or indirectly the tort of patent infringement giving rise to this complaint. Fairway Ford may be served at its principal place of business at 2323 Laurens Road, Greenville, SC.

14.    On information and belief, GM is a Michigan corporation with a principal place of business at 300 Renaissance Center, Detroit, MI 48243 and does business in this judicial district by, among other things, committing jointly, directly and/or indirectly the tort of patent infringement giving rise to this complaint. GM may be served at its principal place of business at 300 Renaissance Center, Detroit, MI 48243.

15.    On information and belief, Whitaker Chevrolet is a South Carolina corporation with a principal place of business at 2320 Laurens Rd. Greenville, SC 29607 and does business in this judicial district by, among other things, committing jointly, directly and/or indirectly the tort of patent infringement giving rise to this complaint. Whitaker Chevrolet may be served at its principal place of business at 2320 Laurens Rd. Greenville, SC 29607.

16.    On information and belief, FCA is a Michigan corporation with a principal place of business at 1000 Chrysler Drive, Auburn Hills, MI 48326 and

does business in this judicial district by, among other things, committing jointly, directly and/or indirectly the tort of patent infringement giving rise to this complaint. FCA may be served at its principal place of business at 1000 Chrysler Drive, Auburn Hills, MI 48326.

17.    On information and belief, Big O is a South Carolina corporation with a principal place of business at 2645 Laurens Rd. Greenville, SC 29607 and does business in this judicial district by, among other things, committing jointly, directly and/or indirectly the tort of patent infringement giving rise to this complaint. Big O may be served at its principal place of business at 2645 Laurens Rd. Greenville, SC 29607.

## JOINDER OF PARTIES (35 U.S. Code § 299)

18.    "(a)Joinder of Accused Infringers.—With respect to any civil action arising under any Act of Congress relating to patents, other than an action or trial in which an act of infringement under section 271(e)(2) has been pled, parties that are accused infringers may be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, only if—

(1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product

or process; *In re EMC Corporation, Misc.* Dkt. No. 100 (Fed. Cir. May 4, 2012).

"On May 4, 2012, a Federal Circuit panel decided the circumstances when a plaintiff may join multiple defendants with unrelated products in a patent infringement suit. The court concluded that independent defendants satisfy the same transaction-or-occurrence test required for joinder when there is a logical relationship between the separate causes of action.  This occurs if there is substantial evidentiary overlap in the facts giving rise to the cause of action. That is, the defendants' allegedly infringing acts, which give rise to the individual claims of infringement, must share an aggregate of operative facts. The Plaintiff is making the argument that the defendants' in this case has satisfied the same transaction-or-occurrence test, and that substantial evidentiary overlap in the facts give rise to this cause of action: The defendants Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic all share the same or similar series of transactions or occurrences relating to the making, offering for sale, or selling of the same accused product (a smartphone—Plaintiff's CMDC device); Qualcomm provides the same or similar wireless modems, system-on-a-chip (SoC), and central processing units (CPUs) for each of the above named smartphone manufacturers relating to the making, offering for sale, or selling of the same accused process. Substantial evidentiary overlap occurs: Qualcomm supplies essential parts to the CMDC device(s) the Plaintiff is alleging the smartphone manufacturers are making; the

service providers (i.e. AT&T, Verizon, Sprint, & T-Mobile), are providing essential connectivity to the CMDC device(s) the Plaintiff is alleging the smartphone manufacturers are making, the development process of the car manufactures (i.e. Ford, Chevrolet, & FCA), and a connected vehicle feature offered for sale by the car dealerships (i.e. Fairway Ford, Whitaker Chevrolet, & Big O Dodge).

(2) questions of fact common to all defendants or counterclaim defendants will arise in the action. "[a]fter the Plaintiff's claims are construed, the claims are compared to the accused (allegedly infringing) device or method. The Plaintiff's invention described in the patent is not determinative – the claims set forth what is protected. Infringement cannot be determined by comparing the Plaintiff's invention that is disclosed in the patent to the accused device or method (an iPhone for comparison, or a Samsung phone for comparison). For infringement to exist, each element (or its equivalent under certain circumstances) of the claim must be present in the accused device or method. Although the Plaintiff's patent may have many claims, only one claim need be infringed for the patent to be infringed. In an infringement action, this step is a question of fact."

19.    With respect to any civil action arising under any Act of Congress relating to patents, other than an action or trial in which an act of infringement under section 271(e)(2) has been pled, parties that are accused

infringers may be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial…

Section 271(e)(2):

> (e)(2). It shall be an act of infringement to submit—(A)an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act or described in section 505(b)(2) of such Act for a drug claimed in a patent or the use of which is claimed in a patent; (B)an application under section 512 of such Act or under the Act of March 4, 1913 (21 U.S.C. 151–158) for a drug or veterinary biological product which is not primarily manufactured using recombinant DNA, recombinant RNA, hybridoma technology, or other processes involving site specific genetic manipulation techniques; (C) if the purpose of such submission is to obtain approval under such Act to engage in the commercial manufacture, use, or sale of a drug, veterinary biological product, or biological product claimed in a patent…

20.     Joinder allows a plaintiff to aggregate multiple defendants into a single lawsuit for cost, efficiency, strategy, and other reasons. Under the Federal Rules of Civil Procedure, a plaintiff can join multiple defendants to a single lawsuit only if any claim raised against each defendant arises out of the "same transaction, occurrence, or series of transactions or occurrences."

21.    Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic induces the service provider companies (i.e. AT&T, Verizon, Sprint, & T-Mobile) to offer for sell, or sale the alleged infringement device(s). Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic induces the automobile manufacturers (i.e. Ford, General Motors, & FCA) to manufacture the hardware and develop the software that enables the alleged infringement device(s) to be interconnected and used with their vehicles offered for sell, or sold. Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic induces the car dealers (i.e. Fairway Ford, Whitaker Chevrolet, & Big "O") to offer for sell, or sale vehicles adapted to received signals from the alleged infringement device(s). "On June 2, 2014, the US Supreme Court unanimously held that a party cannot be liable for indirect infringement under § 271(b) without a threshold showing of direct infringement under § 271(a) in *Limelight Networks, Inc. v. Akamai Techs., Inc.,* No. 12–786 (2014). This opinion reverses the previous standard proffered by the federal circuit that a showing of direct infringement was not necessary so long as the patentee could demonstrate that every claimed method step was performed by entities under the control and encouragement of the accused inducer. Inducement of infringement under 35 U.S.C. § 271(b):

"[Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic], would be liable for inducement of infringement under 35 U.S.C. § 271(b) for sales

made by a third party of an infringing product on the marketplace after [Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic] has been duly notified of the infringement. It seems that [Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic] has thus far somehow avoided any lawsuit properly pleading this form of infringement, which carries the same liability as direct infringement including injunction and damages. So the patent owner in such a case could seek full recourse from [Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic], even where the actual direct infringer is a foreign entity and/or judgment-proof. To prove inducement of infringement, a patent owner must show "that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." This requirement resolves into two parts: 1) inducement, and 2) knowledge. As to the first part, [Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic] offering and providing the reach and services… to the seller of an infringing product goes beyond the typical inducement fact pattern. [Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic] entices sellers by advertising the benefits of its [product], it provides the very platform through which the product is advertised and made available for sale and each sale is transacted, and it facilitates the consummation of each sale such as by calculating and sending

12

net funds to the seller's account. These are affirmative acts that inherently encourage each sale, whether or not [Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic] also fulfills ("picks, packs, and ships") the sales itself. [Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic] actions may be generally directed to a class more so than particularized to a specific seller or sale, but they are no less inducements. [Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic] makes these inducements because it earns a significant "fee" as a percentage of each sale. The second part of the inducement requirement means that [Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic] must have knowledge that a product is covered by one or more claims of a patent that the seller isn't authorized to practice. On this point it likely behooves one to retain a skilled patent attorney to ensure that [Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic] is given notice (letters and claim charts was mailed out to each of the smartphone manufacturing companies named in this action beginning in year 2010) that the unauthorized product is covered by specific patent claims. To preclude a defense by [Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic] that it didn't have adequate basis to know that a product met one or more of a patent's claims, an attorney can prepare and furnish [Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic] a letter providing a detailed

comparison of the elements of the claims to the parts of the infringing

product, such as with a "claim chart" and/or pictures of the product's

parts." https://www.keyip.law/amazon-can-be-sued-for-products-sold-on-its-

marketplace-that-infringe-a-patent/

## RELATED CASES

22.    Plaintiff Larry Golden has filed an action of patent infringement on

September 11, 2019, at the United States District Court for the District of South

Carolina; Greenville Division (Case No. 6:19-cv-2557) against defendants, Apple

Inc. ("Apple"), Samsung Electronics, USA ("Samsung"), LG Electronics, USA,

Inc. ("LG"), Qualcomm Inc. ("Qualcomm"), Motorola Solutions Inc.

("Motorola"), Panasonic Corporation ("Panasonic"), AT&T Inc. ("AT&T"),

Verizon Corporation Services Group ("Verizon"), Sprint Corporation ("Sprint"),

T-Mobile USA, Inc. ("T-Mobile"), Ford Global Technologies, LLC ("Ford"),

Fairway Ford Lincoln of Greenville ("Fairway Ford"), General Motors Company

("GM"), Kevin Whitaker Chevrolet ("Whitaker Chevrolet"), FCA US LLC

("FCA"), and Big O Dodge Chrysler Jeep Ram ("Big O").

23.    The Plaintiff has filed on August 2, 2019 in the Court of Appeals for

the Federal Circuit (Case No. 2019-2134) an appeal from the Judgement, pursuant

to the Court of Federal Claims Order in Case No. 19-104C, filed May 14, 2019,

granting Defendant's motion to dismiss the Plaintiff's "Government Takings of

Property under the Fifth Amendment Clause" claim asserted under 28 U.S.C. §
1491(a); Judge Bruggink presiding. The U.S. Court of Federal Claims has
jurisdiction pursuant to 28 U.S.C. § 1491.

24.     The Plaintiff has filed on 07/02/2019, a petition at the Patent Office
(under the Administrative Procedures Act) to withdraw / unwind the cancellation
certificate regarding the independent claims 11, 74, & 81 of the Plaintiff's
RE43,990 patent. The *Return Mail, Inc. v. United States Postal Service* decision
was based on "subject matter jurisdiction," which means it is Supreme Court law
now that the entire action against Plaintiff's patent was outside of the agency's
statutory authority. The "cure" will be to ask them to nuke the resulting
certificate. Plaintiff respectfully submitted the Petition to strike from the
prosecution file of his U.S. Patent No. RE43,990, a purported *Inter Partes Review*
Certificate, ostensibly created under 35 U.S.C. § 318(b). The USPTO lacked
statutory authorization to generate this document. The existence of the Certificate
is *ultra vires* agency authority. The fact of the Certificate being outside agency
authority only became apparent on June 10, 2019, with issuance of the Supreme
Court's opinion in *Return Mail, Inc. v. United States Postal Service*. The
Certificate is the culmination of an *inter partes review* (IPR) proceeding
commenced (unlawfully, it turns out) by an agency of the United States
government: the Department of Homeland Security ("DHS"). DHS filed its

original IPR petition in 2014, a time when the USPTO was freely accepting and ruling on Federal Government agency-filed petitions. The Plaintiff appeared *pro se* and attempted to defend his patent claims. Eventually, though, the Patent Trial and Appeal Board (PTAB) sided with the Department of Homeland Security (DHS) under the claim construction and review standards of the time, finding all three challenged claims (11, 74, & 81) unpatentable. *"It does seem like the deck is stacked against a private citizen who is dragged into these proceedings. They've got an executive agency acting as judge with an executive director who can pick the judges, who can substitute judges, can reexamine what those judges say, and change the ruling, and you've got another government agency being the prosecutor at the same time. In those situations, shouldn't you have a clear and express rule?"* – Justice Sonia Sotomayor

## JURISDICTION AND VENUE

25.    This is a civil action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§§ 1331, 1332(a) and 1338(a).

26.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b). On information and belief, each defendant has purposely transacted business in this judicial district and has committed acts of joint, direct and/or indirect infringement in this judicial district.

27.    On information and belief, each defendant is subject to this Court's specific and general personal jurisdiction, due at least to their substantial business in this forum, including: (A) at least part of their infringing activities alleged herein, and (B) regularly doing or soliciting business, engaging in others persistent causes of conduct, and/or deriving substantial revenue from goods and services provided to persons and other entities in South Carolina and this judicial district. Each defendant has allegedly used, sold, and/or offered products for sale in South Carolina and is licensed to do business in this state.

28.    The Plaintiff in any matter before any Court cannot decide jurisdiction for that particular Court. Judge Susan Braden, presiding Judge in case no. 13-307C, in June, 2016 stated she cannot precede because the Government has challenged jurisdiction. Judge Braden said she has to "stay" the case until she finds out whether or not she has jurisdiction to adjudicate the case. The Judge also said that we need to determine if the CFC has jurisdiction because if not, I (Plaintiff) may be able to file in another Court that has jurisdiction. The Government submitted its Motion to Dismiss for "Lack of Jurisdiction" and on Nov. 30, 2016 the CFC Judge Braden denied the Government's motion for the following reasons: "[t]he Government argues that, under section 1498(a), a patent owner can sue the United States for patent infringement only if the United States, a contractor, a subcontractor, a person, or a corporation uses or manufactures the patented

17

invention… [t]he Government concedes that NSF Research Grant Awards may be treated as contacts to establish jurisdiction under the Tucker Act… [u]nder the Tucker Act, the United States Court of Federal Claims has jurisdiction to adjudicate a claim if the statute, regulation, or constitutional provision that is the basis for that claim "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained… claims also allege sufficient facts to plausibly establish that the use of the accused devices was "with the authorization or consent of the Government. "Authorization or consent can be implied from the circumstances" e.g., by contracting officer instructions, [or] specifications or drawings which impliedly sanction and necessitate infringement." Hughes Aircraft Co., 534 F.2d at 901. For example, in TVI Energy Corp., the United States Court of Appeals for the Federal Circuit held that the Government impliedly sanctioned the use of a patented invention when it issued a solicitation that required bidders to submit for inspection, and perform live demonstrations of, the accused device… in this case, the relevant NSF grants anticipate that the awardees will develop and test the devices proposed in their applications… [t]he relevant NSF grants are being used to develop: "a portable smartphone attachment that can be used to perform sophisticated field testing to detect viruses and bacteria… "[a device] that derives biological signals from your smartphone's accelerometer . . . [and] [t]his information is useful to base medical diagnoses in

real-life conditions and to help track chronic health conditions and effects of therapeutic interventions... "a cradle and app for the iPhone to make a handheld biosensor that uses the phone's own camera and processing power to detect any kind of biological molecules or cells... "a handheld instrument to help contain the spread of Ebola, HIV, Tuberculosis, and Malaria... [a portable device for] real-time detection of explosives, toxicants, and radiation... and highly sensitive rapid medical diagnostic tests"... Government funding of research that will lead to the development and testing of an accused device supports a reasonable inference that the Government impliedly sanctioned infringing activity." *Judge Braden's Opinion in (Case No. 13-307C; filed Nov 30 2016; Dkt. No. 94); "Memorandum Opinion and Order Denying the Government's Motion to Dismiss"*

29.     Two days after the CFC Judge Braden denied the Government's motion to dismiss and stated the Plaintiff has proven the CFC has jurisdiction, Judge Braden changed her mind and decided to give the Government another chance at showing my pleading lack jurisdiction for the CFC. The Government submitted its Motion to Dismiss for "Lack of Jurisdiction" and on March 29, 2018 the CFC Judge Braden granted the Government's motion for the following reasons: "d. Patent Infringement Allegations Concerning The Government's Alleged Use Of "Smartphones And Other Consumer Devices" Must Be Dismissed Under RCFC 12(b)(l) And 12(b )( 6). "[t]he Government argues that patent infringement

allegations "relating generally to smartphones and other consumer devices" should be dismissed under RCFC 12(b )(1 ), because the... Complaint "fails to sufficiently allege actual 'use' by the [G]overnment of the various combinations of consumer devices, nor would the [G]overnment's use be plausible... ("Incidental benefit to the [G]overnment is insufficient" to satisfy the requirements of 28 U.S.C. § 1498(a).)" Accordingly, these paragraphs of the... Complaint must be dismissed under RCFC 12(b)(l). In the alternative, the Government argues that the same allegations should be dismissed under RCFC 12(b)(6), for "improperly alleg[ing] infringement by or for the [G]overnment in irreconcilably vague and omnibus fashion... [c]omplaint does not contain factual allegations supporting that, "[a]s a result of *contracts, agreements, and procurements* with various Government Agencies ... the United States has used, authorized the use, and manufactured ... Plaintiffs inventions[.]"... the allegations contained therein failed to state a claim upon which relief may be granted and must be dismissed under RCFC 12(b)(6)... ("Incidental benefit to the [G]overnment is insufficient" to satisfy the requirements of 28 U.S.C. § 1498(a).)." *Judge Braden's Opinion in (Case No. 13-307C; filed March 29, 2018; Dkt. No. 130); "Memorandum Opinion and Order Granting-in-Part and Denying-in-Part the Government's Motion to Dismiss"*

30.    The *ONLY* reason the Plaintiff is filing in this Court at this time is because the Court of Federal Claims has determine it lacks jurisdiction to

adjudicate the Plaintiff's claims of third party developers and manufacturers of, the

smartphone, has and possibly is, infringing the Plaintiff's CMDC device.

31.    This Court has specific jurisdiction over each defendant because each

has committed acts giving rise to this action and has established minimum contacts

within this judicial district such that the exercise of jurisdiction over each

defendant would not offend traditional notions of fair play and justice.

## GOLDEN AND THE PATENTS-IN-SUIT

32.    Plaintiff's patents involve covered and claimed inventions evolved as

a result of the patents technological "product grouping" strategies. The "product

grouping" strategies as outlined in the Plaintiff's patent specifications are: the

grouping of communication devices and products; the grouping of monitoring

devices and products; the grouping of detection devices and products; the grouping

of controlling devices and products; the grouping of stall, stop, and vehicle devices

and products; and, the grouping of disabling locking devices and products. Patent

Specifications: "[d]espite the ingenuity of the above devices, methods, and

systems, there remains a need for a multi-detector and disabling lock system for

use with various types of products collected together by common characteristics…

[i]t is another objective of the present invention to provide… products grouped

together by common features in several product groupings such as design

similarity, similarity in the presentation of security problems and similarity with

regard to the presentation of solutions to preventing terrorist solutions… the disabling lock system prevents the unauthorized entry, access and further contamination of the products included in the several product groupings… utilizes a multi-task device for preventing terrorist activity to vulnerable products that are collected or arranged by product grouping categories… Product grouping 4 (monitoring & communication devices) include, but are not limited to, mobile communication devices, mobile communication units, portable communication devices, portable communication equipment, wired communication devices, wireless communication devices, monitoring sites, monitoring terminals, web servers, desktop personal computers (PCs), notebook personal computers (PCs), laptops, satellite cell phones, cell phones, Universal Mobile Telecommunications System (UMTS) phones, personal digital assistants (PDAs), liquid crystal display (LCD) monitors, and satellite monitoring, remote control key fobs, two-way communication key fobs, handhelds… system that can be implemented by business or government at a minimum cost by organizing the products to be protected into product grouping categories."

33.    Significant advancements in mobile technology have occurred since September 11, 2001, both in the advancement of the Plaintiff's claimed Communicating, Monitoring, Detecting, and Controlling (CMDC) devices and the infrastructures that support them.

34.    Since Golden began, his planned strategy for the CMDC device was: to have a device capable of communicating, monitoring, detecting, and controlling; to have a device capable of interconnecting with other computing devices, products, methods, and systems from various governmental agencies, industries, and private companies; to have a device capable of detecting for chemical and biological biometric signatures of humans; to have a device capable of monitoring and reporting over cellular networks, government mobile networks, satellite networks, Wi-Fi networks, and capable of viewing the environment in real time; and, to have a CMDC mobile device that can operate equally and seamlessly via traditional cellular networks, as well as with infrastructure/ad hoc wireless networks.

35.    Plaintiff's CMDC device was, and is, designed for integration with at least that of remote locking mechanisms, remote and pre-programmed stall, stop, and/or vehicle slowdown systems, and mobile detection devices (e.g. smartwatches).

36.    Plaintiff's CMDC devices are being manufactured, sold, used, and offered for sale by the alleged infringers as new and improved desktop computers, new and improved PDAs, PCs, laptops, cell phones, tablets, smartphones, and other wearables such as smartwatches, etc. Golden has obtained several United

States patents that cover various aspects of his Communicating, Monitoring, Detecting, and Controlling (CMDC) device:

37.    On December 25, 2018, the United States Patent and Trademark Office (the "PTO") issued Patent No. 10,163,287 ("the '287 Patent"), entitled "Multi Sensor Detection, Stall to Stop and Lock Disabling System", to Larry Golden. A true and correct copy of the '287 Patent is attached hereto as **Exhibit A**.

38.    On March 07, 2017, the United States Patent and Trademark Office (the "PTO") issued Patent No. 9,589,439 ("the '439 Patent"), entitled "Multi Sensor Detection, Stall to Stop and Lock Disabling System", to Larry Golden. A true and correct copy of the '439 Patent is attached hereto as **Exhibit B**.

39.    On August 04, 2015, the United States Patent and Trademark Office (the "PTO") issued Patent No. 9,096,189 ("the '189 Patent"), entitled "Multi Sensor Detection, Stall to Stop and Lock Disabling System", to Larry Golden. A true and correct copy of the '189 Patent is attached hereto as **Exhibit C**.

40.    On February 12, 2013, the United States Patent and Trademark Office (the "PTO") re-issued Patent No. RE43,990 ("the '990 Patent"), entitled "Multi Sensor Detection, Stall to Stop and Lock Disabling System", to Larry Golden. A true and correct copy of the '990 Patent is attached hereto as **Exhibit D**.

41.    On January 01, 2013, the United States Patent and Trademark Office (the "PTO") issued Patent No. RE43,891 ("the '891 Patent"), entitled "Multi

24

Sensor Detection, Stall to Stop and Lock Disabling System", to Larry Golden. A true and correct copy of the '891 Patent is attached hereto as **Exhibit E**.

42.    On June 10, 2008, the United States Patent and Trademark Office (the "PTO") issued Patent No. 7,385,497 ("the '497 Patent"), entitled "Multi Sensor Detection, and Lock Disabling System", to Larry Golden. A true and correct copy of the '497 Patent is attached hereto as **Exhibit F**.

43.    Golden is the owner by assignment of all rights, title and interest to and in the '287 Patent, the '439 Patent, the 189 Patent, the '990 Patent, the '891 Patent and the '497 Patent.

## CHALLENGE TO PLAINTIFF's '990 PATENT

44.    Plaintiff's '990 patent has a total of 153 claims. Of the total 153 claims there are eight (8) independent claims (11, 33, 56, 74, 81, 125, 136, & 145). Of the eight (8) independent claims only three (3) claims 11, 74, & 81 was challenged by the DHS and DOJ in a Petition for *Inter Partes Review* (IPR) (it is Supreme Court law now that the entire action against Plaintiff's patent was outside of the agencies statutory authority). The DHS and DOJ challenged the Plaintiff's three (3) independent claims with three (3) references (Astrin, Breed, and Mostov) under statue 102 'anticipation' (the standard for USPTO examination for 102 'anticipation' is only one reference); eighteen (18) publications; and one Expert Declaration. The Plaintiff sent the three references; the eighteen publications; and,

one Expert Declaration over to the USPTO for examination. The USPTO said,

"none of the references and disclosures cover the Plaintiff's patents' specifications

and patent claims as a whole under 102 'anticipation' or 103 'obviousness'.

Further, it was determined the Plaintiff's patents and disclosure document filed

Nov. 26, 2004; (**Exhibit G: Disclosure Document No. 565732**) recorded at the

USPTO, all antedate the three (3) references of Astrin, Breed, and Mostov.

| Reference | Filing Date | Publication Date | Basis for anticipation |
|---|---|---|---|
| U.S. Patent Application Publication No. 2006/0250235 ("Astrin") | | 11/09/2006 | 102(b) |
| U.S. Patent Application Publication No. 2006/0181413 ("Mostov") | | 08/17/2006 | 102(b) |
| U.S. Patent provisional filing date is 01/28/2005. Application No. 11/343,560; Patent No. 7,990,270 ("Mostov") | 01/28/2005 | | 102(e) |
| U.S. Patent No. 7,961,094 ("Breed") | 11/29/2007 | | 102(e) |
| *Plaintiff's Disclosure Document filed with USPTO. Disclosure Doc. No. 565732* | *11/26/2004* | | |

45.     Plaintiff was issued the '287 patent on 12-25-2018. The patent has

two (2) independent claims similar to independent claim 11 of the '990 patent; two

(2) independent claims similar to independent claim 74 of the '990 patent; and, two

(2) independent claims similar to independent claim 81 of the '990 patent. The

Information Disclosure Statement (IDS) included the three references, eighteen

publications, and one Expert Declaration submitted in the DHS and DOJ's IPR

petition for review PTAB.

46.     Plaintiff was issued the '439 patent on 03-07-2017. The patent has

four (4) independent claims similar to independent claim 11 of the '990 patent. The

Information Disclosure Statement (IDS) included the three references, eighteen

publications, and one Expert Declaration submitted in the DHS and DOJ's IPR

petition for review at the PTAB.

47.     Plaintiff was issued the '189 patent on 08-04-2015. The patent has

three (3) independent claims similar to independent claim 11 of the '990 patent;

three (3) independent claims similar to independent claim 74 of the '990 patent;

and, three (3) independent claims similar to independent claim 81 of the '990

patent. The Information Disclosure Statement (IDS) included the three references,

eighteen publications, and one Expert Declaration submitted in the DHS and

DOJ's IPR petition for review at the PTAB.

48.    Plaintiff was issued the '189 patent on 08-04-2015. The patent has three (3) independent claims similar to independent claim 11 of the '990 patent; three (3) independent claims similar to independent claim 74 of the '990 patent; and, three (3) independent claims similar to independent claim 81 of the '990 patent. The Information Disclosure Statement (IDS) included the three references, eighteen publications, and one Expert Declaration submitted in the DHS and DOJ's IPR petition for review at the PTAB.

49.    Plaintiff submitted a continuation application [16/350,638] that was filed on 12-19-2018. The application has two (2) independent claims similar to independent claim 11 of the '990 patent. (In the non-final rejection issued on 07-09-2019, the Examiner only requested terminal disclaimers, there was no objections based on prior art references that the Plaintiff needed to respond too). The Information Disclosure Statement (IDS) included the three references, eighteen publications, and one Expert Declaration submitted in the DHS and DOJ's IPR petition for review at the PTAB.

50.    Plaintiff submitted a patent application for re-issue of patent '439 [16/350,874] that was filed on 01-25-2019. The re-issue patent application has forty (40) dependent claims similar to the dependent claims of independent claims 11, 74, and 81 of the '990 patent. The re-issue patent application has a total of 110 claims. Of the total 110 claims there are nineteen (19) independent claims similar

to the independent claims 11, 74, & 81 of the '990 patent. The Information

Disclosure Statement (IDS) included the three references, eighteen publications,

and one Expert Declaration submitted in the DHS and DOJ's IPR petition.

51.     Challenges made by the Defendants' to Plaintiff's patents asserted in

this complaint be made on the heightened standard of "clear and convincing

evidence". The challenge cannot be made by the lesser standard of "preponderance

of evidence", and cannot be based on an IPR "Final Written Decision" when it is

Supreme Court law now that the entire action against Plaintiff's patent claims (11,

74, & 81 of the '990 patent) was outside of the agencies statutory authority.

## CLAIM CONSTRUCTION

*"Inter Partes Review* (IPR): *Department of Homeland Security vs. Larry Golden;*

Case No.: IPR2014-00454 (Patent RE43,990; Claims 11, 74, & 81); Final Written

Decision entered on October 1, 2015. "In the 'Decision to Institute', we construed

certain claim terms. Those constructions are reproduced in the chart below:

| Claim Term | Construction |
|---|---|
| "built in, embedded" (claim 74) | "something is included within, incorporated into, disposed within, affixed to, connected to, or mounted to another device, such that it is an integral part of the device" |
| "communication device" (claim 81) | "monitoring equipment" |

Dec. to Inst. 11-16

"No party challenges these constructions. Both of these terms were modified or removed in the amendment. To the extent that any of these constructions remain relevant after the amendment, we see no reason to modify them… [w]e further determined that no explicit construction was necessary for any other claim terms. Dec. to Inst. 10-11. Based on the record adduces during trial, we see no need to construe any other terms…"

52.    "Beginning with the claim preamble amendment, the preamble of claim 11 originally read: "A communication device of at least one of *a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal at a monitoring site* for monitoring products for communication therebetween, comprising…." In claim 154, the language in italics has been eliminated and replaced with "the products grouped together by common features in the product grouping category of design similarity (e.g., computer terminal, personal computer (PC))…." Patent Owner contends that this new language is consistent with words found in the disclosure of the '118 application. Mot. To Amend 4. Patent Owner further contends that this new language is broad enough to include the removed items, such as cell phones and smart phones, because those items are "species terms" that are "included in the genus 'monitoring equipment' and 'communication device' when the clause 'products grouped together by common features in the product groupings category of design similarity' is included." *Id*. Patent Owner argues that "[t]he specific devices removed, such as the cell phones and smart phones would be recognized by one of ordinary skill in the art as a type

30

of communication device or monitoring equipment because cell phones and

smartphones are devices that are capable of communication and are capable of

receiving signals." *Inter Partes Review* (IPR): *Department of Homeland Security*

*vs. Larry Golden;* Case No.: IPR2014-00454 (Patent RE43,990; Claims 11, 74, &

81); Final Written Decision entered on October 1, 2015.

## FRCP RULE 11(b): REPRESENTATIONS TO THE COURT

53.    The Plaintiff hereby certifies that to the best of Plaintiff's knowledge,

information, and belief, formed after an inquiry reasonable under the

circumstances, that the correspondence from the Plaintiff, cited by the United

States Court of Federal Claims; (1) was not presented for any improper purpose,

such as to harass, cause unnecessary delay, or needlessly increase the cost of

litigation; (2) the claims, defenses, and other legal contentions are warranted by

existing law or by a nonfrivolous argument for extending, modifying, or reversing

existing law or for establishing new law; (3) the factual contentions have

evidentiary support or, if specifically so identified, will likely have evidentiary

support after a reasonable opportunity for further investigation or discovery; and,

(4) the denials of factual contentions are warranted on the evidence or, if

specifically so identified, are reasonably based on belief or a lack of information.

(b) Representations to the Court. By presenting to the court a pleading,

written motion, or other paper—whether by signing, filing, submitting, or

later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances…

## INTENT TO FORCE DEFENDANTS TO INCUR LEGAL FEES

54.    On information and belief, each defendant has unjustly benefited or profited (i.e. unjust enrichment) at the Plaintiff's expense without making restitution for the reasonable value of any property, services, or other benefits that have been unfairly received and retained. On information and belief, each defendant has infringed Plaintiff's inventions covered in a patent(s), and each defendant has purposely violated the antitrust federal and state laws from business transacted in this judicial district and has committed acts of joint, direct and/or indirect infringement and antitrust law violations in this judicial district.

55.    It is the belief of the Plaintiff that the non-movants (i.e. defendants) in most cases of alleged patent infringement, put forth strategies to incur legal cost and fees to the movant (i.e. plaintiff). An example of this type of behavior can be viewed in *Larry Golden v. The United States*, CFC Case No. 13-307C. During the first 12 months of filing the DOJ and Trial Court delayed the case by repeatedly asking for and being granted motions for a more definitive statement; the following 18 months the Plaintiff spent defending certain patent claims of his '990 patent at the PTAB in response to a frivolous IPR petition; after that the Plaintiff spent 19

32

months proving jurisdiction. After six years the CFC Trial Court have not ordered

the DOJ to present any prior art references to challenge the validity of Plaintiff's

patent claims, or ordered the DOJ to respond to the Plaintiff's claim charts to show

non-infringement. The DOJ and Trial Court has cost the Plaintiff hundreds of

thousands of dollars litigating this case. Therefore, in this action Plaintiff don't

quite understand how the Plaintiff, whose personal net worth is less than $100K,

can incur legal fees upon the multi-million and multi-billion dollar corporations

named in this action. It is the prayer of the Plaintiff that this Court won't allow the

defendants named in this action to repeat the same behavior of delaying this case to

incur upon the Plaintiff unnecessary cost.

56.    If the International Trade Commission (ITC) can conduct an

investigation and determine whether there's patent infringement in nine to twelve

months then so too can the District Courts. The major difference between the ITC

and the District Courts is, the ITC doesn't allow for negative procedural posture

that is generated outside the need to show valid patents and infringement or lack

thereof.

57.    The actions and behavior of the Defendants has cost the State of South

Carolina billions in taxable revenue.

58.    According to Statista.com, the total United States Smartphone Sales

for years 2007 thru 2019 is $536.32 billion US dollars: "[t]his statistic shows the

value of smartphone sales in the United States from 2007 to 2018 and also includes a forecast for 2019. In 2019, the revenue from smartphone sales is projected to amount to 77.5 billion U.S. dollars". Statista.com, August 30, 2019, Smartphone sales in the United States from 2005 to 2019 (in billion U.S. dollars). Retrieved from: https://www.statista.com/statistics/191985/sales-of-smartphones-in-the-us-since-2005/

59.    The report, titled "The Smartphone Royalty Stack: Surveying Royalty Demands for the Components within Modern Smartphones", has finally tagged a dollar amount to what consumers pay toward royalty fees. The figure comes to about $120 for a hypothetical smartphone that costs $400. This means that 30 percent of a device's cost goes to royalty payments, which is almost equal to the price of the phone's physical components. Retrieved from: https://www.digitaltrends.com/mobile/400-smartphone-pay-120-patent-royalties-research-claims/

60.    Considering the data from above ¶¶ 53-54, if the companies had entered into a licensing agreement for 2/3 the 30% (20%) for royalty payments to the Plaintiff on the sale of the smartphones for years 2007 thru 2019 ($536.32B); the estimated royalty payments to the Plaintiff equals $107.26B. What does that means to the State of South Carolina? $107.26B subject to a South Carolina state tax rate of 7.5% equals $8.04B in state tax revenues.

61.    What does that mean for the State of South Carolina? THE

FINANCIAL STATE OF SOUTH CAROLINA; September, 2019:

"A new analysis of the latest available audited financial reports found South

Carolina has a Taxpayer BurdenTM of $14,500, earning it a "D" grade from

Truth in Accounting. South Carolina's overall financial condition improved

by 17 percent from the previous fiscal year. South Carolina's elected

officials have made repeated financial decisions that have left the state with

a debt burden of $21.8 billion. That burden equates to $14,500 for every

state taxpayer. South Carolina's financial problems stem mostly from

unfunded retirement obligations that have accumulated over the years. Of

the $43 billion in retirement benefits promised, the state has not funded $14

billion in pension and $11.1 billion in retiree health care benefits."

62.    If the smartphones manufactures at least satisfies the $107.26B

royalty liability for the sale of the smartphones alone, the estimated $8.04B in state

tax revenue could be used to pay off 37% of the State of South Carolina's debt

burden. The above estimates does not include future royalties from the smartphone

manufacturers; the settlement amount and future royalties from the service

providers; and the settlement amount and future royalties from the automobile

manufacturers and automobile dealers.

63.    If the named Defendants want to limit cost, the Defendants needs to submit and enter their defense to invalidate Plaintiff's patents on a "clear and convincing evidence" standard; submit and enter their non-infringement defense; and/or submit and enter any indemnification agreements made between the defendants, indemnifying a defendant from liability for the making, offering to sell, or selling an infringing product or device. The submissions should be made immediately.

64.    The Plaintiff's conception date is September 11, 2001 for Plaintiff's Communicating, Monitoring, Detecting, and Controlling (CMDC) Device needed to administer Plaintiff's three "economic stimulus packages". A documentary video CD is included as **Exhibit H: CMDC Conception CD**.

## SIGNIFICANT HISTORICAL EVENTS

65.    After the events of 9/11 the Plaintiff introduced to the United States ("government") three economic stimulus and terrorism prevention packages: The packages were titled: the "ATPG" project; the "SafeRack" project; and the "V-Tection" project. The Plaintiff submitted the packages to President Bush and his administration, the U.S. Senators and U.S. Congressmen that was in office during the Bush administration beginning in the year 2003. Beginning in year 2004, the Government began enforcing and administering the Plaintiff's intellectual property subject matter strategies. The packages outlined how the Government could

stimulate the economy following the 9/11 attacks and provide protection against future terrorist activities.

**The "ATPG" Project:**

66.    Significant advancements in mobile technology have occurred since September 11, 2001, both in the advancement of the Plaintiff's claimed Communicating, Monitoring, Detecting, and Controlling (CMDC) devices and the infrastructures that support them.

67.    The Plaintiff's planned strategy for the CMDC device was to: have a device capable of communicating, monitoring, detecting, and controlling; have a device capable of interconnecting with other computing devices, products, methods, and systems from various governmental agencies, industries, and private companies; have a device capable of detecting for chemical, biological, radiological, nuclear, explosives, and humans; have a device capable of monitoring and reporting over cellular networks, government mobile networks, satellite networks, Wi-Fi networks, and capable of viewing the environment in real time; and, for example, CMDC mobile devices that can operate equally and seamlessly via traditional cellular networks, as well as with infrastructure/ad hoc wireless networks.

68.    More specifically the Plaintiff's CMDC device was, and is, designed for integration with any of the products grouped under this "ATPG" project, the

"SafeRack" project, and the "V-Tection" project. The CMDC device was designed to be mass developed, mass manufactured, mass marketed, and mass commercialized across all industries, agencies, groups, demographics, race, ages, and gender to form a ubiquitous communicating, monitoring, detecting, and controlling environment to prevent terrorist activity.

69.     Upon information and belief of the Plaintiff the Department of Homeland Security (DHS) entered into cooperative agreements with Apple, Samsung, LG, and Qualcomm under the DHS Cell-All solicitation for the development of Plaintiff's CMDC device described in the Plaintiff's intellectual property subject matter. **Exhibit I: DHS Cell-All video CD**

70.     "Verto Analytics looked at the numbers of Apple, Samsung, and LG (CMDC devices) smartphones currently owned by U.S. consumers, and the equivalent market share. January 2018, Apple leads the pack, with 45% market share (representing nearly 84 million smartphones), while Samsung claims 33% of the market (61.5 million smartphones). These two manufacturers dominate the U.S. smartphone market; LG, the third-place contender, has 10% market share, while all other brands combined account for 12% of the devices on the U.S. smartphone market. The Government later entered into contracts with Panasonic and Motorola for the use of their versions of CMDC devices (i.e. smartphones, laptops, tablets, etc.)

71.    The Plaintiff's claimed intellectual property subject matter antiterrorist technology products, devices, etc. can be placed in, on, upon, or adjacent any of the Plaintiff's claimed Communicating, Monitoring, Detecting, and Controlling (CMDC) devices that is equivalent to a new and improved personal digital assistance (PDA), a new and improved personal computer (PC), a new and improved laptop, a new and improved cell phone, a new and improved tablet, a new and improved smartphone, and other new and improved wearables (i.e. pagers, watches, etc.), as they all are grouped together by common features of design similarities. The Plaintiff's CMDC devices can be placed in, on, upon, or adjacent; vehicles, locks, medical equipment, detection devices, stall/stop systems.

72.    One of the strategies outlined in the ATPG package was the development of a Communicating, Monitoring, Detecting, and Controlling (CMDC) device that is capable of connecting and grouping various products, devices, methods, systems, networks, etc. for communicating, monitoring, detecting, and controlling. Beginning in the year 2008, the Government entered into R&D contracts and cooperative agreements for the development and commercialization of the CMDC device(s). The contracts and cooperative agreements for the development of the CMDC device(s) offered protection from being directly sued for infringement to Apple, Samsung, LG, Qualcomm, Panasonic, and Motorola.

73.     The Government's request for a communicating, monitoring, detecting, and controlling (CMDC) device in the form of an improved cell phone, smartphone, laptop, or tablet to be used for the benefit of the public is significantly the same or equivalent to the Plaintiff's intellectual property subject matter and claimed CMDC device(s). The specifications and capabilities of the CMDC device(s) developed and/or manufactured by Apple, Samsung, LG, Qualcomm, Panasonic, and Motorola for the Government, are significantly the same as the Plaintiff's CMDC device(s) as illustrated below:

- Communication: at least one of a satellite connection, Bluetooth connection, WiFi connection, internet connection, cellular connection, long and/or short range radio frequency (RF) connection, or GPS connection was "taken" for the benefit of the Government and for Government "use".
- Monitoring: at least one of a viewing screen for monitoring in real time, viewing screen monitoring for CBRNE-H signal alerts, viewing screen monitoring for CBRNE-H color coded indicator lights, or viewing screen monitoring for tracking, alerts, and heart rate. Turn on chem/bio heart rate notifications, so you know if your heart rate remains above or below a chosen beats per minute (BPM), or check for an irregular heart rhythm.
- Detecting: at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor; that is wired or wireless, capable of being disposed within, on, upon or adjacent the CMDC device. *Apple Watch*: "Apr 8, 2019 - The two sensors could also be used to detect pollution or carbon monoxide, patents from Apple that suggest the company might be working on chemical smell

... devices, which could mean phones, tablets or smartwatches." Article: *New patents suggest Apple wants to teach your Watch to smell, which...* Retrieved from: https://www.mobihealthnews. com/.../new-patents-suggest-apple-wants-teach-your-wat... You can also check your chem/bio heart rate any time using the Heart Rate app.

- Controlling: at least a fixed, portable or mobile communication device interconnected to a fixed, portable or mobile product, capable of wired or wireless communication therebetween, for sending signals to at least lock or unlock doors, stall, stop, or slowdown vehicles, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems.

74.    The security features of the Government's CMDC device are significantly the same as the Plaintiff's CMDC device as illustrated below:

- Biometrics: that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and or signature or a face recognition to at least gain access to the CMDC device or to prevent unauthorized use of the CMDC device.

- Lock, Unlock, Disabling Lock: the CMDC device being equipped to receive signals from or send signals to engage (lock), disengage (unlock), or disable (make unavailable) locks after a certain number of failed attempts to unlock.

- Near-Field Communication: Near Field Communication or NFC is a short-range communication channel. The purposes for this technology is to simplify first-time connections to other wireless technologies, like Wi-Fi and Bluetooth. Near Field Communication in a CMDC device can be used as part of a two-factor access control system for unlocking a door. Biometric Fingerprint recognition is used for authentication and NFC is used to

transmit authentication information to a computer controlling the door. NFC is preferred over RFID because RFID has a frequency vulnerable for detonating bombs.

- Location and Tracking: The CMDC tracking is a process for identifying the location of the device, whether stationary or moving. Localization may be effected by a number of technologies, such as using multi literation of radio signals between (several) cell towers of the network and the device, or simply using GPS. Some GPS CMDC devices use wireless-assisted GPS to determine the user's location. In wireless-assisted systems, the device uses the orbiting GPS satellites in conjunction with information about the device's signal. Sometimes called enhanced GPS, wireless-assisted GPS can often get a fix on the user's location faster than a GPS-only receiver. Some wireless-assisted systems can work inside buildings, under dense foliage and in city areas where traditional receivers cannot receive signals. GPS-enabled CMDC devices with view screens can often display turn-by-turn directions as well as announce them through the device's speaker. A database of maps is used to provide the directions. The CMDC device locator provides GPS coordinates and can dial emergency CMDC device numbers. The Government, parents and caregivers can track the device's location by device or online and can receive notification if it leaves a designated "safe area."

75.    The Government's CMDC device comprising a stop, stall, or vehicle slowdown mean; and, the CMDC device being interconnected to the vehicle to control certain operating systems, are significantly the same as the Plaintiff's device as illustrated below:

- Stall, Stop, Slowdown: the CMDC device being equipped to send signals to vehicles (i.e. driver, driverless, autonomous, unmanned aerial, unmanned land, unmanned sea, boats, trucks, etc.) that engages the computer, electrical, fuel, and/or air systems of the vehicle or a combination of the computer, electrical, fuel and air systems that include but are not limited to vehicle brakes, foot peddle, lights, speed controls, ignition, steering, transmission, and the horsepower of the motor.

- Vehicle Operating Systems: ignition start/stop, door lock/unlock, temperature settings and temperature on/off, vehicle brakes, foot peddle, lights, speed controls, and steering.

76.    As a result of the Government sharing Plaintiff's intellectual property subject matter with at least that of Samsung, Apple, LG, Qualcomm, Panasonic and Motorola for the development, manufacture, and commercialization of mobile devices which are substantially the same as Plaintiff's communicating, monitoring, detecting, and controlling (CMDC) devices: the economic impact is a reduction in value of the Plaintiff's property and by virtue of the access, disclosure, use with the public, and in some instances manufacture and development by or for the Government and its third party awardees; has destroyed the Plaintiff's competitive edge; has resulted in the development and manufacture products, devices, methods, and systems for public use without paying any compensation to Plaintiff; has had a substantial adverse impact (means unfavorable or harmful) on Plaintiff; has prevented the successful development of Plaintiff's CMDC device in accordance with the "reasonable investment-backed expectations" of the Plaintiff; and, the

character of the Defendants' actions was triggered when the Defendants caused a permanent invasion of the Plaintiff's property and eliminated all economically beneficial uses of such property. Some examples are:

77.    It is the belief of the Plaintiff that the U.S. Government Accountability Office, in accordance with the most recent OMB estimate, the federal government spends about $1.2 billion annually on about 1.5 million mobile (CMDC) devices and associated services. View GAO-15-431. For more information, contact Carol R. Cha at (202) 512-4456 or chac@gao.gov.

78.    It is the belief of the Plaintiff that in 2008, the DHS S&T entered into what's known as cooperative research and development agreements with four cell phone (CMDC) manufacturers: Qualcomm, LG, Apple, and Samsung. These written agreements, which bring together a private company and a government agency for a specific project, often accelerate the commercialization of technology developed for government purposes. Information taken directly from the Department of Homeland Security's website.

79.    It is the belief of the Plaintiff that in 2012, "the U.S. Department of Defense granted two separate security approvals for Samsung's Galaxy (CMDC) smartphones, along with (CMDC) iPhones and iPads running Apple's latest operating system—moves that would boost the number of U.S. government

agencies allowed to use those (CMDC) devices. An approval by the Pentagon is considered as the highest standards in security."

80.    It is the belief of the Plaintiff that in 2013, the U.S. Department of Defense dropped its exclusive BlackBerry contract and opening all of its (CMDC) mobile communications networks to Apple, Google, and other (CMDC) device makers. 'The Department of Defense is taking a leadership role in leveraging (CMDC) mobile device technology by ensuring its workforce is empowered with (CMDC) mobile devices, Defense Department Chief Information Officer Teri Takai said in a statement..."

81.    It is the belief of the Plaintiff that in 2014; by the Defense Information Systems Agency (DISA) opening its networks to Samsung and Apple (CMDC) devices, Defense DISA will broaden the variety of mobile (CMDC) computers that troops and civilian Defense Department employees can use in the field, on bases, in offices and elsewhere to receive and send information and work almost anywhere at any time.

82.    It is the belief of the Plaintiff that in 2014, Samsung has announced that five of its Galaxy (CMDC) devices have been approved for the U.S government's Defense Information System Agency (DISA) products list. All of them are using Android 4.4 (KitKat) along with Samsung's KNOX secure

workspace platform, which includes system-level encryption for enterprise-based apps.

83.    It is the belief of the Plaintiff that in 2014, the United States Air Force replaced 5000 legacy BlackBerry smartphones with Apple's (CMDC) iPhones. The announcement, reported by Defense News, comes as the future of BlackBerry within the Department of Defense is debated, with the chips seeming to fall on the side of transitioning away from a network supporting a mish-mash of BlackBerry devices to a mix of modern (CMDC) devices — though apparently without BlackBerry 10 in that mix.

84.    It is the belief of the Plaintiff that in 2015, the Navy Enterprise Networks (NEN) Program Office made a transition to Android and iOS (CMDC) devices. Early users will be able to choose between the (CMDC) iPhone devices, but the Navy wants to be as flexible as possible and allow users to pick the (CMDC) devices that will work best for them. Approval of the (CMDC) iPhone 6 and iPad Air was made in Feb. 2015, and approval to use the Samsung Android (CMDC) phones and tablets was made in March.

85.    It is the belief of the Plaintiff that in 2016, is the fiscal year Marines received Samsung (CMDC) smartphones that make calling for fire support easier, quicker and more accurate.

86.     As a result of the manufacture, development, offer to sell, sell, or use, of Plaintiff's CMDC devices, Apple Inc. ("Apple"), Samsung Electronics, USA ("Samsung"), LG Electronics, USA, Inc. ("LG"), Qualcomm Inc. ("Qualcomm"), Motorola Solutions Inc. ("Motorola"), Panasonic Corporation ("Panasonic"), AT&T Inc. ("AT&T"), Verizon Corporation Services Group ("Verizon"), Sprint Corporation ("Sprint"), T-Mobile USA, Inc. ("T-Mobile"), Ford Global Technologies, LLC ("Ford"), Fairway Ford Lincoln of Greenville ("Fairway Ford"), General Motors Company ("GM"), Kevin Whitaker Chevrolet ("Whitaker Chevrolet"), FCA US LLC ("FCA"), and Big O Dodge Chrysler Jeep Ram ("Big O") has destroyed any competitive edge the Plaintiff may have had for owning the patent rights to the CMDC (i.e. smartphones, laptops, tablets, etc.) devices, and is therefore being "unjustly enriched".

87.     The doctrine of unjust enrichment allows a plaintiff to recover from a defendant, without the benefit of an enforceable contractual obligation, where the defendant has unfairly benefited from the plaintiff's efforts without compensation. In New York, the elements of an unjust enrichment claim are "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011).

88.     Unjust enrichment is defined as a method of recovery when a "person has been unjustly enriched at the expense of another[,]" and thus the enriched party is required to make restitution to the other party. Put another way, it is an equitable principle to ensure "the return of, or payment for, benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated." Unjust enrichment is only available in the absence of an express contract. Stated differently, a plaintiff cannot recover damages for unjust enrichment if he can recover damages for breach of a contract regarding the same act(s). For this reason, unjust enrichment is often referred to as a "contract implied in law."

89.     Upon information and belief the network service providers for ubiquitous (universal, global, etc.) coverage that is being unjustly enriched as a result of Plaintiff's CMDC devices are AT&T, Verizon, Sprint, and T-Mobile.

90.     It is the belief of the Plaintiff that at least that of Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic began in at least year 2007, the manufacture, development, and use of Plaintiff's CMDC devices (also included are Plaintiff's new and improved smartphones, laptops, tablets, etc.) while under contract with the Federal Government. Section 28 U.S.C. § 1498(a) states:

> "Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's

remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture."

91.     This statute does two things: first, it acts as a waiver of the government's immunity, and second, it operates an assumption of liability by the government, thus insulating the government contractor itself from liability. However, during an earlier stage of *Zoltek Corporation v. United States* (Fed. Cir. 2012), the government argued that because the process was partially performed abroad, it did not fall under Section 1498(a). In a 2006 opinion (*Zoltek III*), a panel of the Federal Circuit agreed, and held that the scope of 1498(a) was limited to direct infringement under 35 U.S.C. § 271(a).  Because 271(a) does not include manufacturing processes that are begun abroad and completed in the United States, the court concluded that the United States had not assumed liability under 1498(a).

92.     It is the belief of the Plaintiff that Apple, Samsung, LG, Qualcomm, Motorola, and Panasonic began in at least year 2007, to manufacture at least one process of Plaintiff's CMDC device abroad to avoid liability under Section 1498(a). It wasn't until *Zoltek Corporation v. United States* (Fed. Cir. 2012) that the "loop hole" was closed, "we hold that for the purposes of section 1498, the use or importation 'within the United States [of] a product which is made by a process patented in the United States' constitutes use of the invention without lawful right because the products embody the invention itself." 672 F.3d 1326. It is further the

belief of the Plaintiff that each Defendant saturated the market with the manufacture, use, offer to sell, or sell of Plaintiff's CMDC devices between the years of 2007 and 2012 because the "loop hole" existed. As long as the "loop hole" existed the Defendants could not be held liable for patent infringement and was not obligated to enter into a licensing agreement with the Plaintiff.

**The "SafeRack" Project:**

93.    Every dollar spent fighting the war on terrorism is a stunning blow to world productivity and could well be echoed in a slow-down in the economy, which means higher inflation rates and higher unemployment, followed by a lowered standard of living. The events of September 11 were, indeed, attacks on the Nation's economy and on a way of life. The events of 9/11 effectiveness must be judged in terms of not only lost lives, but also lost livelihoods. Moreover, new enemies, aware as never before of our society's vulnerabilities, may well attempt to exploit them in the years ahead. That's why the Plaintiff's coordinated campaign, introduced as his intellectual property subject matter, to combine terrorism prevention with economic growth became so crucial. The Plaintiff have ample precedent for such a campaign. In previous years, the U.S. government has come to recognize that many military technologies are too expensive to build independently and are best developed in tandem with civilian applications. Often called "dual-use" technologies, they have included the integrated circuit.

94.    The Plaintiff's "dual-use technologies" strategies described in his intellectual property subject matter, offer dual economies in the war on terrorism. The strategies are designed to reduce costs by increasing production volume. But just as important, they expand the base of researchers, developers, designers, testers and users, thus greatly expanding the number of smart people evaluating and improving them. Cheaper products and more brainpower—a powerful one-two punch. Saving lives, saving money and saving the environment in one program is the purpose of the Plaintiff's strategies outlined in the "SafeRack" project.

95.    The roll of Congress and the various government agencies (i.e. DHS, DoD, ARL, NRL, DARPA, FEMA, etc.) in the Plaintiff's coordinated campaign, introduced as his intellectual property subject matter, was to create a national and world demand for the research, development, and commercialization of the various antiterrorist technologies introduced as the Plaintiff's intellectual property subject matter. Congress and the various government agencies was tasked with giving full attention to promoting antiterrorist technologies that follow two fundamental guidelines. First, the Plaintiff's technologies should be designed to deny terrorists tools and targets. Second, the Plaintiff's technologies should not be an economic burden on society; they must have a broad and substantial impact on commerce and productivity.

96.    The Plaintiff's coordinated campaign, introduced as his intellectual property subject matter, include "Product Grouping" strategies. The strategies are to group anti-terrorism wearables (i.e. new and improved smartphones, smartwatches, etc.), networked systems, devices, detection devices, and scanners with communication methods like GPS, radio-frequency (RF), near-field communication (NFC), cellular towers, navigation, internet, wireless, telematics, satellite, alarms, and wired communication to deter and/or prevent terrorist acts, activities or threats while making it economically feasible for commercialization.

97.    The strategy is to group by design similarities of common features, the Plaintiff's intellectual property subject matter antiterrorist technologies into categories based on similarities of security problems, similarities of solutions, similarities of design, similarities of materials, similarities of cost, similarities of technical advancement capabilities, and similarities of availability. *The strategy is centered on creating demands which encourages competition and by mass-producing, can significantly reduce cost.* The advantages of the Plaintiff's intellectual property subject matter "Product Grouping" strategies are: products uniform, greater specialization, optimum utilization of workers and machinery, low production cost per unit, low stock-piling cost, production control is simplified, high sales turnover, and equipment standardized. The strategies are designed to stimulate the economy.

98.     The Government's implementation of the Plaintiff's intellectual property subject matter antiterrorist technology strategies, as part of the "SafeRack" project, gave society interchangeable, integrable sensors and detectors that offer improved dynamic response, greatly reduced size, high precision, increased reliability, specific design, high sensitivity, simplicity, low cost, quick response, low power requirement, that can be micro-machined and mass-produced. The sensors and detectors can be mass-produced in the millions at low prices, which is the main appeal.

99.     The Plaintiff's claimed intellectual property subject matter antiterrorist technology products, devices, etc. can be placed in, on, upon, or adjacent any of the products listed in any of the product grouping categories of: Product grouping 1 (storage & transportation); Product grouping 2 (sensors); Product grouping 3 (detector case; modified and adapted); Product grouping 4 (monitoring & communication devices); Product grouping 5 (communication methods); Product grouping 6 (biometrics); Product grouping 7 (authorized person); Product grouping 8 (chemical / biological / biometric / human heart rate); Product grouping 9 (processors) Product grouping 10 (locking mechanisms); and, Product grouping 11 (stall-to-stop / slowdown means).

100.    The Plaintiff's claimed intellectual property subject matter antiterrorist technology products, devices, etc. can be placed in, on, upon, or

adjacent any of the Plaintiff's claimed Communicating, Monitoring, Detecting, and Controlling (CMDC) devices, to include a new and improved personal digital assistance (PDA), a new and improved personal computer (PC), a new and improved laptop, a new and improved cell phone, a new and improved tablet, a new and improved smartphone, and other new and improved wearables (i.e. pagers, watches, etc.) as they all are grouped together by common features of design similarities.

101.    The "SafeRack" project allows us to group and integrate past government initiatives, current government initiatives and future government initiatives. When an announcement or solicitation is made by the various government agencies (i.e. DHS, DoD, ARL, NRL, DARPA, FEMA, etc.) that a large number of vulnerable places will be equipped with security devices that has an open platform for integrating chemical, biological, explosive, human, radiation, and nuclear sensors and detectors, the industry for developing the needed sensors and detectors will began producing high quality, low cost detectors and sensors to meet that demand. Satisfying and meeting the demand has stimulated the economy.

102.    Unique within the Plaintiff's intellectual property subject matter antiterrorist technologies for meeting the government's standards and requirements for antiterrorist devices to be used with the public, is the Plaintiff's intellectual property subject matter "disabling locking mechanisms". The Plaintiff's

intellectual property subject matter includes grouping the "disabling locking mechanisms" by common features of design similarities for: products that do not have locks (e.g. mail drop boxes, newspaper vending boxes, trash cans, etc.); products that have locks (e.g. cargo containers, mini-storage houses, warehouses, lockers, cluster mail boxes, keyed mail boxes, trailers, etc.); products that have biometric locks (e.g. airport lockers, vehicles, smartphones etc.); and, products that have locks and are mobile (e.g. cars, trains, ships, mail carriers, planes, trucks, vans, buses, campers, etc.).

103.   It is the belief of the Plaintiff that certain members of Congress who entered into an implied-in-fact contract with the Plaintiff and who forwarded the Plaintiff's intellectual property subject matter over to the Department of Homeland Security for procurement has violated state and federal antitrust laws. The members are: the Honorable Senator Fritz Hollings (05/21/2003); the Honorable Senator Fritz Hollings (10/01/2003); the Honorable Senator Lindsey Graham (10/21/2003); the Honorable Senator Jim DeMint (08/01/2004). The Executive Branch: the Office of the Vice President, Dick Cheney (06/03/2003); the Office of the President, George Bush (06/20/2005).

104.   Upon information and belief the result of the Government has entered into contracts with third-party contractors (i.e. Samsung, Apple, LG, Qualcomm, Panasonic and Motorola) for the development, manufacture, and

commercialization of mobile devices which are substantially the same as Plaintiff's communicating, monitoring, detecting, and controlling (CMDC) devices is a violation of certain antitrust laws. Examples of the Government contracting with third party contractors for the development and commercialization of Plaintiff's CMDC (smartphone) device; capable of detecting for WMDs and hazardous agents and compounds, are illustrated below:

105.   Upon information and belief, the US Department of Homeland Security (DHS), NASA's Ames Research Center, (the United States), entered into cooperative agreements (contracts) with Qualcomm Inc., LG Electronics, Apple Inc., and the Samsung Group after receiving several notices of Plaintiff's intellectual property for the development and commercialization of the "Cell-All: Synkera MikroKera Ultra". The "Cell-All: Synkera MikroKera Ultra" is a low-cost, low-power, high-speed nanosensor-based chemical sensing chip which consists of 64 nanosensors to detect deadly gases and plugs into an Apple iTouch 30-pin dock connector. The new device is able to detect and identify chemicals in the air using a "sample jet" and sends detection data to another phone (e.g. Apple iPhone) or a computer via telephone communication network or Wi-Fi. Additional monitoring equipment for this "Cell-All" project is at least a Samsung Galaxy s6 smartphone that has an Android operating system (O/S).

106.    Upon information and belief, the U.S. Army Edgewood Chemical Biological Center (ECBC), the U.S. Army Communications-Electronics Research, Development and Engineering Center (CERDEC), and the Defense Threat Reduction Agency (DTRA), (the United States), entered into a contract(s) with Samsung after receiving several notices of Plaintiff's intellectual property for the development and commercialization of the "Biotouch System / Nett Warrior Smartphone System". The U.S. Army developed a biological and chemical detection system. They developed volatile organic compound (VOC) strips that work with a device called a Biotouch. Biotouch relays information from VOC strips and sends results to a Nett Warrior Samsung Galaxy Note II smartphone, Defense Systems reports.

107.    Upon information and belief, the US Department of Homeland Security (DHS), (the United States), entered into a contract(s) with Samsung after receiving several notices of Plaintiff's intellectual property for the development and commercialization of the "PositiveID / Firefly DX Samsung Galaxy s6 Smartphone". The PositiveID's (PSID) M-BAND was developed by MicroFluidic Systems ("MFS") subsidiary; received funding in excess of $30 million from the Department of Homeland Security (DHS). Firefly DX, builds upon technology advances achieved in development of M-BAND system. Firefly Dx overview: Miniaturized version of M-BAND using same technologies, real-time PCR

detection; Hand-held detection provides sample purification and biological analysis; A two-part device consisting of a portable handheld instrument with wireless communication and disposable single-use cartridges all analytical elements; Data processed in real time and communicated to PC or smartphone (e.g., Galaxy s6) using mobile applications and cloud storage; Has the ability to detect and identify common pathogens and diseases as various strains of influenza, E.coli, MRSA and human papilloma virus ("HPV").

108.   It is the belief of the Plaintiff that the Plaintiff's proposed plan for government spending on the "war on terrorism" has stimulated our Nation's economy in the way of increased jobs, and increased revenue for the private sector which results in increased tax revenue received by the government:

109.   "In the summer of 2017, the Stimson Center convened a nonpartisan study group to assess the adequacy and transparency of federal efforts to gather and report data on government wide spending on counterterrorism (CT). Stimson's research shows that total federal spending – including spending for government wide homeland security efforts, international programs, and the wars in Afghanistan, Iraq, and Syria – totaled $2.8 trillion for fiscal years 2002 through 2017. CT spending peaked at $260 billion in 2008 at the height of the wars in Afghanistan and Iraq. This represents a 16-fold increase over the pre-9/11 total. In 2017, as war funding declined, total CT spending equaled $175 billion, nearly an

11-fold increase from the 2001 level. With this growth, CT spending has become a substantial component of total discretionary spending for programs across a wide range of areas, including defense, education, and medical research. With total U.S. discretionary spending of more than $18 trillion over fiscal years 2002-2017, CT spending made up 15 percent of the total during that period. At its peak in 2008, CT spending amounted to almost 22 percent of total discretionary spending. By 2017, CT spending had fallen to 14 percent of the total."

110.   The Plaintiff must have given the Government notice and have established an implied-in-fact contract(s) with the Government for Plaintiff's intellectual property subject matter: Six months after the DHS was established on November 25, 2002; and, after the Plaintiff had given the Government notice, the Plaintiff received response letters as **Exhibit J: Response Letters**

111.   On May 21, 2003 from the Honorable Senator Fritz Hollings stating, "I have contacted the Department of Justice and the Department of Homeland Security to try to be of assistance";

112.   On June 3, 2003 from the Office of the Vice President, Dick Cheney stating, "[y]our correspondence has been forwarded to the Department of Homeland Security for review. You will hear back directly from the Department";

113.   On October 1, 2003 from the Honorable Senator Fritz Hollings stating, "[t]hank you for contacting me regarding your difficulty with receiving a response from the Department of Homeland Security";

114.   On October 21, 2003 from the Honorable Senator Lindsey Graham stating, "I have contacted the Department of Homeland Security on your behalf. I have asked that they review your request and respond directly to you";

115.   On January 24, 2005 the Honorable Senator Jim DeMint introduced Plaintiff's intellectual property subject matter in a Bill. "S. 3 (109th Congress); January 24, 2005. 1st Session 1. Short Title 'Protecting Americans in the War on Terror Act of 2005' was a bill in the United States Congress".

116.   On June 20, 2005 from the Office of the President, George Bush stating, "[t]hank you for your letter regarding homeland security technology procurement. Please know I have forwarded it to the Department of Homeland Security for review and response".

117.   *Implied-in-Fact Contracts:*
"Williston (1920) moved away from contracts implied by law, saying: "Contracts are express when their terms are stated by the parties. Contracts are implied when their terms are not so stated." This implied-in-fact idea was recognized in *Baltimore & Ohio R. Co. v. United States*, 261 U.S. 592 (1923), where, in interpreting a Federal statute, the court defined an "implied contract" under the

statute to mean "an agreement 'implied in fact' founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." Justice Steakley, of the Texas Supreme Court, wrote that "[o]ur courts have recognized that the real difference between expressed contracts and those implied in fact is in the character and manner of proof required to establish them." *Haws & Garrett General Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972).

http://www.orsinger.com/PDFFiles/the-Rise-of-American-Contract-Law.pdf

118.   *Breach of Implied-in-Fact Contracts*:

"To sue the United States for congressional interference with a contract right (public or private), the United States must have waived its sovereign immunity: the United States is immune from suit except as it consents to be sued; *Library of Congress v. Shaw*, 478 U.S. 310, 315 (1986); *United States v. Mitchell*, 463 U.S. 206, 211 (1983). This waiver/consent precondition applies to both breach of contract claims and takings claims; *See, e.g., Perry v. United States*, 294 U.S. 330, 352 (1935) (breach of contract claims). The consent to suit has been given, in both cases, in the form of the Tucker Act; 28 U.S.C. § 1491(a)(1). The Tucker Act gives the U.S. Court of Federal Claims jurisdiction over "claims" against the United States "founded either upon the Constitution… or upon any express or implied

61

contract with the United States ….” The phrase “upon the Constitution” plainly

includes takings claims against the United States—important not only for

jurisdictional reasons, but because the Takings Clause of the Fifth Amendment is

not construed to contain its own waiver of sovereign immunity. The waiver comes

only from the Tucker Act. As for breach of contract actions, the phrase “upon any

express or implied contract” states the Tucker Act’s coverage of such actions

explicitly. However, the phrase “implied contract” has been limited by case law to

contracts implied in fact, excluding contracts implied in law. As mentioned,

plaintiffs filing breach of contract complaints against the United States often add a

takings claim under the Fifth Amendment Takings Clause. The Takings Clause is

relevant because contract rights generally are deemed to constitute “property” as

that term is used in the Takings Clause. *See, e.g., United States Trust Co. v. New*

*Jersey*, 431 U.S. 1, 19 n.16 (1977) (“Contract rights are a form of property and as

such may be taken … provided that just compensation is paid.”), and *Lynch v.*

*United States*, 292 U.S. 571, 579 (1934) (“Valid contracts are property, whether

the obligor be a private individual, a municipality, a State, or the United States.”)

A breach by the United States, therefore, can be argued to constitute a taking of

one’s property in a contract right. http://nationalaglawcenter.org/wp-content

/uploads/assets/crs/R42635.pdf

119.   As a result of the Government sharing Plaintiff's intellectual property subject matter with at least that of the Defendants for the development, manufacture, and commercialization of antiterrorism devices and mobile devices which are substantially the same as Plaintiff's antiterrorism devices for communicating, monitoring, detecting, and controlling: the economic impact is a reduction in value of the Plaintiff's property and by virtue of the access, disclosure, use with the public, and in some instances manufacture and development by or for the Government and its third party awardees; has destroyed the Plaintiff's competitive edge; has resulted in the development and manufacture products, devices, methods, and systems for public use, without paying any compensation to Plaintiff; has had a substantial adverse impact (means unfavorable or harmful) on Plaintiff; has prevented the successful development of Plaintiff's antiterrorism devices and CMDC devices in accordance with the "reasonable investment-backed expectations" of the Plaintiff; and, the character of the Defendants' actions was triggered when the Defendants caused a permanent invasion of the Plaintiff's property and eliminated all economically beneficial uses of such property.

**The "V-Tection" Project:**

120.   Under the vehicle protection ('V-Tection') project it was the Government's responsibility to institute mandates for the Plaintiff's intellectual

subject matter "stall, stop, and vehicle slow-down systems (SSVSS)" for

Government, private, and consumer vehicles.



121.    Taken from 9/11, the Plaintiff's intellectual subject matter pre-

programmed stall, stop, and vehicle slow-down systems, if applied, possibly could

have prevented the terrorist from taking over the planes because the aircraft would

have been on an autonomous or pilotless flight pattern. If the plane deviated away

from the perimeters established within the flight pattern, the control tower would

receive an alert. If the pre-programmed stall, stop, and vehicle slow-down systems does not control the plane away from a crash and toward a safe landing, the personnel in the control tower has the ability to take control of the plane and steer it to a safe landing (i.e. remote air satellite or cellular).

122.   Some of the Plaintiff's intellectual subject matter pre-programmed stall, stop, and vehicle slow-down systems include: lane departure stall, stop, and vehicle slow-down systems; unintended acceleration stall, stop, and vehicle slow-down systems; adapted cruise control stall, stop, and vehicle slow-down systems; reverse acceleration stall, stop, and vehicle slow-down systems; pre-crash stall, stop, and vehicle slow-down systems; and/or, a crowd sourcing stall, stop, and vehicle slow-down systems.

123.   The operators (i.e. drivers, pilots, conductors, consumers, etc.) are equipped with the Plaintiff's intellectual subject matter CMDC devices (new and improved desktop computers, new and improved PDAs, PCs, laptops, cell phones, tablets, smartphones, and/or other wearables such as smartwatches, etc.) that are interconnected to vehicles' operating systems for initiating a stall, stop, and vehicle slow-down.

124.   The Plaintiff's intellectual property subject matter includes technology to ensure the Government and law enforcement has a way to stop, stall, or slow a vehicle down. The Government and law enforcement MUST have a way

65

to control the stopping, stalling, and slowing down the autonomous or driverless vehicles (e.g. unmanned land, air, and sea vehicles). This capability is for vehicles equipped with the Plaintiff's programmed systems but have been hacked or overridden. It also include vehicles that have been stolen, vehicles used for kidnapping, or vehicles used as a weapon of mass destruction (WMD).

125.    Some of the Plaintiff's intellectual property subject matter stall, stop, and vehicle slow-down systems intended for Government and law enforcement includes sending signals over cellular or by satellite. The Government can also send signals by way of electromagnetic pulse, electrostatic discharge, microwave beam, or radio frequency using a handheld or some other CMDC device such as a new and improved smartphone, laptop, or tablet.

126.    The result of the Government sharing Plaintiff's intellectual property subject matter with various Government Agencies (i.e. TSA, DoD, DHS), and private industry for the development, manufacture, and commercialization of stall, stop, and vehicle slow-down systems for Government and consumer vehicles. The Government and private industry's SSVSSs are substantially the same as the Plaintiff's intellectual property subject matter stall, stop, and vehicle slow-down systems for Government and consumer vehicles. Examples are illustrated below:

127.    *Connected Vehicles: Connecting through such service providers as defendants AT&T, Verizon, T-Mobile and Sprint.*

"There are already millions of connected cars on the road and most of them connect over the same cellular network your phone does. In 2016, for the first time, cellular connections for cars grew at a faster rate than new phone connections. The Kymeta Corporation is delivering the next generation of the connected car. The company has developed a service called KĀLO, making it possible to gain access to satellite connectivity to deliver seamless, global internet access. It works just like a cellular plan for your car but, because it can use satellite networks, it works even where there are no cell towers." https://spacenews.com/ satellites-and-the-connected-car/

128.    *American Vision for Safer Transportation through Advancement of Revolutionary Technologies Act or the AV START Act.*

"This bill: (1) establishes a framework for a federal role in ensuring the safety of highly automated vehicles (HAVs); (2) preempts states from adopting, maintaining, or enforcing any law, rule, or standard regulating an HAV or automated driving system (ADS) regarding certain safety evaluation report subject areas; (3) sets forth conditions under which HAVs may be introduced into interstate commerce for testing, evaluation, or demonstration; and (4) applies certain safety exemptions to HAVs. The Department of Transportation shall: (1) establish a technical committee on HAV and ADS safety, (2) establish a working group on ADS education efforts, and (3) research the traffic safety implications of

HAVs. Each HAV or ADS manufacturer shall execute a written plan for identifying and reducing cybersecurity risks."

https://www.congress.gov/bill/115th-congress/senate-bill/1885

129.    *USDOT Automated Vehicles Activities:*

"The U.S. Department of Transportation (USDOT) is committed to facilitating a new era of transportation innovation and safety and ensuring that our country remains a leader in automation. The Department of Transportation is acting as a convener and facilitator, partnering with a broad coalition of industry, academic, states and local, safety advocacy, and transportation stakeholders to support the safe development, testing, and deployment of automated vehicle technology. U.S. Department of Transportation invites public comment on the document, Preparing for the Future of Transportation: Automated Vehicles 3.0 (AV 3.0) [ISBN 978-0-16-094944-9]. This document builds upon Automated Driving Systems: A Vision for Safety 2.0 (ADS 2.0) and expands the scope to provide a framework and multimodal approach to the safe integration of AVs into the Nation's broader surface transportation system."

130.    *Government's stall, stop, or vehicle slowdown systems:*

"1- Eureka Aerospace High Powered Electromagnetic System, or HPEMS; 2- Laser Weapons System (LaWS); 3- ATHENA (Advanced Test High Energy Asset); 4- Counter-Electronics High-Powered Microwave Advanced Missile

Project (CHAMP); 5- Northrop Grumman X-47B UCAS & X-47B Control Display Unit (CDU); 6- Boeing MH-6 Little Bird Helicopter; 7- K-Max Self-flying Helicopter; 8- Oshkosh Defense Autonomous Unmanned Ground Vehicle (UGV) "TerraMax; and, 9- Dream Hammer's "Ballista" Software for Computer, Tablet or Smartphone."

131.    Upon information and belief, the Government (the United States) has entered into contracts and agreements for the development of stall, stop, and vehicle slowdown systems (SSVSS) that's interconnected to at least one CMDC device of a new and improved smartphone, tablet, or laptop, supplied by at least that of Apple, Samsung, LG, Qualcomm, Motorola, or Panasonic (e.g. defendants), and, is serviced by at least the of AT&T, Verizon, Sprint, or T-Mobile. After several notices from the Plaintiff the Government and several third parties (e.g. defendants) continues to violate antitrust laws by taking the Plaintiff's intellectual property subject matter and using it for the benefit of the public without paying the Plaintiff compensation. The SSVSSs are at least those of the Eureka Aerospace High Powered Electromagnetic System, or HPEMS; the Laser Weapons System (LaWS); the ATHENA (Advanced Test High Energy Asset); the Counter-Electronics High-Powered Microwave Advanced Missile Project (CHAMP); the Northrop Grumman X-47B UCAS & X-47B Control Display Unit (CDU); the Boeing MH-6 Little Bird Helicopter; the K-Max Self-flying Helicopter; the

Oshkosh Defense Autonomous Unmanned Ground Vehicle (UGV) "TerraMax;

and, the Dream Hammer's "Ballista" Software for Computer, Tablet or

Smartphone.

132.   It is the belief of the Plaintiff that the Plaintiff's proposed plan for

government spending on "vehicles' occupied, autonomous vehicles, and driverless

vehicles" has stimulated our Nation's economy in the way of increased jobs, and

increased revenue for the private sector which results in increased tax revenue

received by the government:

> "With automakers and technology companies rushing to develop self-driving
> cars, the Obama administration on Thursday pledged to expedite regulatory
> guidelines for autonomous vehicles and invest in research to help bring them
> to market. Until now, the federal government has taken a hands-off approach
> to regulating new technology that allows vehicles to operate independently
> and without an actual driver. But in an announcement here at the North
> American International Auto Show, Transportation Secretary Anthony Foxx
> said the government would remove hurdles to developing autonomous
> vehicles and set further guidelines for them within six months. "We are
> bullish on autonomous vehicles," Mr. Foxx said. The actions we are taking
> today brings us up to speed." The government's new support includes a
> request in President Obama's proposed budget for the next fiscal year for $4
> billion, to be spent over 10 years, to finance research projects and
> infrastructure improvements tied to driverless cars. Mr. Foxx said that
> autonomous vehicles had the potential to reduce traffic accidents and
> significantly improve safety on America's roads. He estimated that as many

as 25,000 deaths could have been avoided last year if driverless technology had been in widespread use."

133.   It is the belief of the Plaintiff that significant advancements in SSVSS technology and CMDC mobile technology that has occurred since September 11, 2001. Plaintiff also believes that significant advancement in antitrust law violations has occurred since September 11, 2001 by the defendants named in this complaint.

134.   As a result of the manufacture, development, offer to sell, sell, or use, of Plaintiff's SSVSSs and CMDC devices, at least that of Apple Inc. ("Apple"), Samsung Electronics, USA ("Samsung"), LG Electronics, USA, Inc. ("LG"), Qualcomm Inc. ("Qualcomm"), Motorola Solutions Inc. ("Motorola"), Panasonic Corporation ("Panasonic"), AT&T Inc. ("AT&T"), Verizon Corporation Services Group ("Verizon"), Sprint Corporation ("Sprint"), T-Mobile USA, Inc. ("T-Mobile"), Ford Global Technologies, LLC ("Ford"), Fairway Ford Lincoln of Greenville ("Fairway Ford"), General Motors Company ("GM"), Kevin Whitaker Chevrolet ("Whitaker Chevrolet"), FCA US LLC ("FCA"), and Big O Dodge Chrysler Jeep Ram ("Big O") has destroyed any competitive edge the Plaintiff may have had for owning the patent rights to the SSVSSs (i.e. remote air SSVSS, remote ground SSVSS, and pre-programmed automatic SSVSS) and CMDC devices (i.e. smartphones, laptops, tablets, etc.), and therefore being "unjustly enriched" by violating certain antitrust laws. The Plaintiff owns at least six patents that covers extensively Plaintiff's SSVSSs and CMDC devices:

71

135.    On December 25, 2018, the United States Patent and Trademark Office (the "PTO") issued Patent No. 10,163,287 ("the '287 Patent"), entitled "Multi Sensor Detection, Stall to Stop and Lock Disabling System", to Larry Golden (Plaintiff).

136.    On March 07, 2017, the United States Patent and Trademark Office (the "PTO") issued Patent No. 9,589,439 ("the '439 Patent"), entitled "Multi Sensor Detection, Stall to Stop and Lock Disabling System", to Larry Golden (Plaintiff).

137.    On August 04, 2015, the United States Patent and Trademark Office (the "PTO") issued Patent No. 9,096,189 ("the '189 Patent"), entitled "Multi Sensor Detection, Stall to Stop and Lock Disabling System", to Larry Golden (Plaintiff).

138.    On February 12, 2013, the United States Patent and Trademark Office (the "PTO") re-issued Patent No. RE43,990 ("the '990 Patent"), entitled "Multi Sensor Detection, Stall to Stop and Lock Disabling System", to Larry Golden (Plaintiff).

139.    On January 01, 2013, the United States Patent and Trademark Office (the "PTO") issued Patent No. RE43,891 ("the '891 Patent"), entitled "Multi Sensor Detection, Stall to Stop and Lock Disabling System", to Larry Golden (Plaintiff).

140.    On June 10, 2008, the United States Patent and Trademark Office (the "PTO") issued Patent No. 7,385,497 ("the '497 Patent"), entitled "Multi Sensor Detection, and Lock Disabling System", to Larry Golden (Plaintiff).

141.    The Plaintiff is the owner by assignment of all rights, title and interest to and in the '287 Patent, the '439 Patent, the 189 Patent, the '990 Patent, the '891 Patent and the '497 Patent.

142.    Plaintiff first contacted GM/OnStar during the summer months of 2007 to ask if they would like to participate with Plaintiff in responding to a Department of Homeland Security (DHS) solicitation: (Broad Agency Announcement; BAA 07-02A).  The Plaintiff's primary contact person at GM/OnStar was Mr. Jim Culbertson. The Plaintiff asked Mr. Culbertson if GM/OnStar has the capability of bringing a moving vehicle to a stall, stop, or slowdown.  Mr. Culbertson's response to me was, "I need time to find out if we have those capabilities and if there is interest from upper management".

143.    After several conversations and several failed attempts to reach Mr. Culbertson, Plaintiff never heard back from GM/OnStar. Plaintiff noticed while watching TV, an announcement made by GM/OnStar on October 9, 2007 of a new, "Stolen vehicle slow down system" that was being offered by GM/OnStar beginning in the following year on their 2009 models. GM/OnStar's "Stolen vehicle slow down system" is substantially the same as the Plaintiff's "stall, stop,

and vehicle slowdown systems (SSVSS)" that Plaintiff had discussed earlier with GM/OnStar's Mr. Culbertson during the summer months of 2007.

144.   Plaintiff called Mr. Jim Culbertson on March 27, 2008 at 11:20 a.m. at 313-665-2791.  Mr. Culbertson referred Plaintiff to Angie Miller at 313-665-1485. When Plaintiff dialed Ms. Miller's number, the answering machine for a Michelle came on; therefore, Plaintiff did not leave a message. On April 14, 2008, Plaintiff faxed a letter to the General Motors Corporation, to the attention of Mr. G. Richard Wagoner, Jr., Chairman & CEO and to several members of the General Motors leadership team, to include, Mr. Frederick A. Henderson, President and Chief Operating Officer, Mr. Ray G. Young, Executive Vice President and Chief Financial Officer, and Mr. Robert S. Osborn, Group Vice President and General Counsel. The contents of the letter are stated below:

> I've made several attempts to contact Representatives of GM. I talked with and forwarded information to a few Representatives of both OnStar and GM last year during the months of March and April of 2007.
>
> "I shared with them technology I had at that time "patent pending" that is designed to stop moving vehicles. I wanted OnStar and GM to collaborate with me in responding to a Government solicitation.
>
> I tried again to contact OnStar and GM when you made the announcement on October 8, 2007 of having technology that will stop moving vehicles which caused your share price to move upward $4 dollars over the next 4 days (value, $2.2 billion).

I need to know if you have a patent for the technology. If you do, please send that information to me. My Patent Attorney and the PTO didn't find one. My patent application and all the claims have been allowed by the PTO.

If I don't hear back from you in a couple of days, my plans are to do a cease-and-desist for the 2 million, 2009 vehicles you have scheduled to roll out with that technology."

145.   Plaintiff filed a complaint against GM/OnStar on February 11, 2010 with the U.S. SECURITIES AND EXCHANGE COMMISSION; Atlanta Regional Office.  Plaintiff's compliant was, "GM/OnStar made an announcement to the general public of technology they knew that was patent pending in an effort to prime the market, thus causing GM shares to experience a four dollar per share increase over a four day period".  The SEC file number is ARO-00022399.

146.   Plaintiff filed a complaint against GM/OnStar on February 16, 2010 with the Federal Trade Commission; Bureau of Competition; Office of Policy and Coordination.  Plaintiff compliant was, "GM/OnStar stole the technology Plaintiff presented to them".  The FTC file number is 25448002.

147.   Plaintiff filed a complaint against GM/OnStar on February 16, 2010 with the South Carolina Department of Consumer Affairs.

148.   *GM Bailout:*

"The federal government took over GM and Chrysler in March 2009. The Government fired GM CEO Rick Wagoner. GM entered bankruptcy on June 1,

75

2009. By the end of July, GM emerged from bankruptcy reorganization, became

two separate companies and spun off GMAC into Allied Financial. The Treasury

Department began selling off its ownership of GM in 2010. The Obama

administration used the take-over to set new auto efficiency standards design to

improved air quality and forced U.S. automakers to be more competitive against

Japanese and German firms. On December 18, 2014, the Treasury Department

ended the bailout. That's when it sold its last remaining shares of Ally Financial,

formerly known as General Motors Acceptance Corporation. It had bought them

for $17.2 billion to infuse cash into the failing GM subsidiary. The Treasury

Department sold the shares for $19.6 billion, making a $2.4 billion profit for

taxpayers. On June 1, 2009, GM entered bankruptcy. It had $82 billion in assets

and $172.8 billion in liabilities. That month, sales hit their low point of 9.545

million cars and trucks. The government lent GM $30.1 billion to fund operations

through June and July while it went through bankruptcy reorganization. It

also guaranteed GM's extended warranties. In return, it bought 60 percent of the

company in warrants for common stock and preferred stock. The Canadian

government bought 12 percent. A union health trust received 17.5 percent stock

ownership. That was in lieu of the $20 billion needed to cover benefits for 650,000

retirees. Bondholders received 10 percent stock ownership in lieu of $27 billion in

bonds. Stockholders lost all their investment. GM promised to repay the $30

billion loan by 2012 when it planned to break even. The company pledged to cut its debt by $30 billion by converting debt ownership for equity. It agreed to pay union health care benefits to retirees by 2010. It promised to sell its Saab, Saturn, and Hummer divisions, reducing the number of models for sale to 40. It shut down 11 factories, closed 40 percent of its 6,000 dealerships, and cut more than 20,000 jobs. Government funding also provided the following incentives for new car buyers: The government backed all new car warranties; the economic stimulus bill allowed new car buyers to deduct all car sales and excise taxes; Congress approved TARP-funded subsidies of zero percent financing for some Chrysler vehicles. The government intended to make GM more efficient. That would allow it to become profitable when sales returned to 10 million vehicles a year. That happened in July 2009, when sales hit 10.758 million. GM emerged from bankruptcy on July 10, 2009, as two separate companies. Old GM held most of the debt. New GM held the assets, $17 billion in debt, the contract with unions, and its underfunded pension funds. This allowed it to move forward as a profitable company. The new company only has four brands: Chevrolet, Cadillac, GMC, and Buick. The company sold Saab and discontinued Saturn and Hummer. In April 2010, New GM repaid its $6.7 billion TARP loan. In November 2010, Treasury revealed it would sell half its ownership of GM. That sale allowed an initial public offering on the stock market of $33 a share. It had already gotten back $37.2

billion by selling its ownership in GM. In November 2013, the Treasury

Department announced it would sell its remaining 31.1 million shares in GM. In

December 2014, Treasury sold its remaining shares in Ally Financial."

file:///C:/Users/Owner/Documents/Auto%20Industry%20Bailout%20(GM,%20Chr

ysler,%20Ford).html

149.   *Chrysler Bailout*

"The federal government took over Chrysler in March 2009. The Government

required Chrysler to merge with Italy's Fiat S.p.A. Chrysler entered bankruptcy on

April 3, 2009. By the end of July, Chrysler emerged from bankruptcy

reorganization and became a brand owned mostly by Fiat. Chrysler paid off the last

of its loans by 2011. On January 16, 2009, the Treasury Department approved

a $1.5 billion loan for Chrysler Financial. The interest rate for the loans was

one point above Libor. In return, Chrysler Financial promised to pay the

government $75 million in notes and reduce executive bonuses by 40 percent. As a

result, car buyers got zero percent financing for five years on some models.

Chrysler received $4 billion of the $7 billion bridge loan it originally requested. In

return, its owner Cerberus vowed to convert its debt to equity. Chrysler had also

asked for $6 billion from the Energy Department to retool for more energy

efficient vehicles. Chrysler wanted the Big Three to partner with the federal

government in a joint venture to develop alternative energy vehicles. That didn't

happen, and Chrysler didn't get the loan from the Energy Department. Instead, it pledged to debut an electric vehicle in 2010 and ramp up its production to 500,000 by 2013. On April 30, 2009, Chrysler filed for bankruptcy. Treasury Secretary Tim Geithner agreed to lend it $6 billion to fund operations while in bankruptcy. It emerged as a new company, 58.5 percent of which automaker Fiat S.p.A. of Italy now partly owned. This Fiat-Chrysler merger created the world's sixth largest automaker. The rest was owned by the United Auto Workers Retiree Medical Benefits Trust. Chrysler closed underperforming dealerships as part of its bankruptcy proceedings. In May 2011, Chrysler repaid $11.2 billion of its outstanding $12.5 billion in TARP loans six years ahead of schedule. Total cost to taxpayers was $1.3 billion. In 2013, Fiat CEO Sergio Marchionne announced plans to take Chrysler public on the New York Stock Exchange. This allowed Fiat to purchase the rest of the company and merge the two into a more competitive global automaker. In October 2014, it was listed under the ticker symbol "FCAU." The new company was called Fiat Chrysler Auto Company N.V. Its 2017 market capitalization was $17 billion."

file:///C:/Users/Owner/Documents/Auto%20Industry%20Bailout%20(GM,%20Chrysler,%20Ford).html

    150.   *Ford Bailout*

"Ford Credit received its bailout from the Term Asset-Backed Securities Loan Facility, not TARP. That was a government program for auto, student, and other consumer loans. Although Ford did not receive TARP funds, it did receive government loans. These were critical because banks were not lending during the financial crisis. It requested a $9 billion line-of-credit from the government. In return, it pledged to spend $14 billion on new technologies. On June 23, 2009, Ford received a $5.9 billion loan from the Energy Department's Advanced Technology Vehicles Manufacturing program. In return, it pledged to accelerate development of both hybrid and battery-powered vehicles, close dealerships, and sell Volvo. It upgraded factories in Illinois, Kentucky, Michigan, Missouri, and Ohio to produce hybrid vehicles. Ford used the funds to switch its focus to commercial electric vehicles. In 2016, CEO Mark Fields said, "We want to become a top player in electrified solutions. The company wants to lead…we can win such as with our commercial vehicles." Eighty-one percent of the funds went to create new efficiency technologies for gas-powered vehicles. For example, they helped fund Ford's aluminum bodies in the F-series pickups. The Congressional Research Service estimated the loans saved 33,000 jobs. Ford will repay this loan by 2022. Many argue that Ford needed the funds to sustain its cash flow during the recession. Ford says it was in better shape than the other two (e.g. GM and FCA) because it had mortgaged its assets in 2006 to raise $23.6 billion. It used

the loans to retool its product lineup to focus on smaller, energy efficient vehicles. It got the United Automobile Workers to agree it could finance half of a new retiree health care trust with company stock. By April 2009, it retired $9.9 billion of the debt it had taken out in 2006."

file:///C:/Users/Owner/Documents/Auto%20Industry%20Bailout%20(GM,%20Chrysler,%20Ford).html

151.   The U.S. government's $80.7 billion bailout of the auto industry lasted from December 2008 to December 2014. The U.S. Department of the Treasury used funds from the Troubled Asset Relief Program. In the end, taxpayers lost $10.2 billion.

152.   The "Big Three" (defendants: GM, FCA USA, and Ford) automakers asked Congress for help similar to the bank bailout. They warned that General Motors Company and Chrysler LLC faced bankruptcy and the loss of 1 million jobs. The Ford Motor Company didn't need the funds since it had already cut costs. But it asked to be included so it wouldn't suffer by competing with companies who already had government subsidies. The Treasury Department lent money and bought stock ownership in GM and Chrysler. It provided incentives to spur new car purchases. In effect, the government nationalized GM and Chrysler just as it did Fannie Mae, Freddie Mac, and the American International Group. The main purpose of the bailout was to save jobs at GM. But GM had to slash its

employment and production anyway. Toyota and Honda continued to increase their U.S. factories, providing jobs for American auto workers. If there had been no bailout, Ford, Toyota, and Honda would have picked up even more market share. Since they had U.S. plants, they would have increased jobs for Americans once the recession was over. The loss of GM would be like the loss of Pan Am, TWA, and other companies that had a strong American heritage but lost their competitiveness. It would have perhaps tugged at the heartstrings of America but not really hurt the economy. As a result, the auto industry bailout was not critical to the U.S. economy, like the rescue of AIG or the banking system.

file:///C:/Users/Owner/Documents/Auto%20Industry%20Bailout%20(GM,%20Chrysler,%20Ford).html

153.  *Promoting Innovation through Patent and Antitrust Law and Policy: CHRISTINE A. VARNEY, Assistant Attorney General, Antitrust Division U.S. Department of Justice; Remarks as Prepared for the Joint Workshop of the U.S. Patent and Trademark Office, the Federal Trade Commission, and the Department of Justice on the Intersection of Patent Policy and Competition Policy; Implications for Promoting Innovation. Alexandria, Virginia / May 26, 2010 / "The United States Department of Justice (DOJ)"*

"Invention and innovation are critical in promoting economic growth, creating jobs, and maintaining our competitiveness in the global economy. In fact, a recent

PTO report estimates that innovation accounts for fully three quarters of our nation's post-World War II growth. Progress in technology and production processes drives prices down and quality up, while expanding the range of consumer choices. Many of the greatest benefits of invention and innovation are hard to measure—the value of technologies that alleviate illness and extend our lives that deliver food and water to vulnerable populations, that allow us to respond to natural disasters, and that allow families separated by oceans to connect face-to-face cannot be quantified in dollars and cents alone. In short, innovation is the essential element not only of economic growth, but of human progress as well. We thus have a vital interest in seeing it flourish. Today, it is widely recognized that patent and antitrust drive innovation in different but complementary ways. Both disciplines promote dynamic efficiency: that is, a system of property rights and market rules that create appropriate incentives for invention, innovation, and risk taking—delivering the greatest returns for society not just for today, but tomorrow as well. The patent grant does this by providing incentives for inventors to take risks and make investments in research and development. Patents transform a claimed piece of intellectual progress into a property right, allowing the inventor to exclude others from using that invention during the term of the patent. Our intellectual property framework further advances follow-on innovation through public disclosure of the invention. Antitrust law core mission is to appropriately

83

foster and protect the competitive environment by preventing certain conduct that threatens free markets. This environment is what pushes companies to constantly innovate and allows them to profit when they do. Antitrust recognizes the critical role that intellectual property rights play in driving innovation and so values these rights. Yet antitrust applies the same analytical framework to intellectual property as it does to other forms of property, and imposes some rules about how the patent monopoly can—and cannot—be used. Thus, antitrust and patent law work together to create and preserve the appropriate incentives for technological progress by creating property rights and preserving competition around those rights. The stakes are high for competition and innovation if the patent system is not working properly or antitrust enforcement policy is improperly calibrated. Our ability to use one regime to correct for shortcomings in the other is limited. This is what makes sessions like today's so important. The competitive implications of flaws in either system are tremendous, and although many of the issues on the table today are properly issues of only patent or antitrust in the first instance, their ramifications for the other system will certainly be worth consideration in the final analysis. That is why I believe it is important for the Department of Justice to participate regularly in intellectual property cases-such as in *Bilski, Quanta, eBay v. MercExchange*, the Google Books settlement dispute, and, recently, *Arkansas Carpenters Health (the "Cipro" case)*. It is also why both the Antitrust Division of

84

the Department of Justice and the Federal Trade Commission devote substantial thought to these issues, including the agencies' joint antitrust guidelines for the licensing of intellectual property in 1995, the FTC's substantial 2003 report on patent law and policy, and the agencies' joint workshops and 2007 report on the intersection of antitrust and intellectual property law and policy. Though the issues we will be considering are difficult ones, I am confident that by promoting an ongoing dialogue and even closer working relationship among all of our agencies, we will find ways to make sure our tools work together to further our common goal of promoting innovation and competition. American patent law's devotion to "the progress of science and the useful arts" is as old as the Constitution itself. I am committed to making sure that antitrust equally promotes such progress."

https://www.justice.gov/atr/speech/promoting-innovation-through-patent-and-antitrust-law-and-policy

154.   It is the belief of the Plaintiff that the Defendants named in this complaint: Apple, Samsung, LG, Qualcomm, Motorola, Panasonic, AT&T, Verizon, Sprint, T-Mobile, GM, Whitaker Chevrolet, Ford, Fairway Ford, FCA, and Big O, has violated certain antitrust laws that protects the Plaintiff from anticompetitive behavior, and the Plaintiff's "right to exclude others" in a patent grant owned by the Plaintiff (see the related case filed in the United States District Court of South Carolina; Greenville Division; Case No. 6:19-cv-2557).

## COUNT I
### (Infringement of the '287 Patent)

155.    Golden realleges and incorporates herein the allegations set forth in Paragraphs 1-154.

156.    Plaintiff alleges that at least one of the Defendants named in this complaint has infringed at least independent claim 4 & 5 of the '287 patent that covers Plaintiff's communication, monitoring, detecting and controlling (CMDC) device. **Exhibit K: Claim Chart for the '287 Patent**

157.    On information and belief, Apple is jointly, directly and/or indirectly infringing at least claim 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, and Apple Watch series 3, 4, & 5) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Apple is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '287 patent and Apple is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Apple have caused damage to Golden, which infringement and damage will continue unless and until Apple is enjoined. **Exhibit L: Claim Chart for Apple Inc.**

158.    On information and belief, Apple is jointly, directly and/or indirectly infringing at least claim 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, and Apple Watch series 3, 4, & 5) included without limitation the Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Apple is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '287 patent and Apple is thereby liable for

87

infringement of the '287 patent pursuant to 35 U.S.C. § 271. Apple have caused damage to Golden, which infringement and damage will continue unless and until Apple is enjoined.

159.   The alleged infringement of Apple identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

160.   On information and belief, Samsung is jointly, directly and/or indirectly infringing at least claim 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Samsung is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '287 patent and Samsung is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Samsung have caused damage to

Golden, which infringement and damage will continue unless and until Samsung is enjoined. **Exhibit M: Claim Chart for Samsung Electronics, USA.**

161.   On information and belief, Samsung is jointly, directly and/or indirectly infringing at least claim 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series) included without limitation Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary

infringement contentions that Samsung is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '287 patent and Samsung is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Samsung have caused damage to Golden, which infringement and damage will continue unless and until Samsung is enjoined.

162.   The alleged infringement of Samsung identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

163.   On information and belief, LG is jointly, directly and/or indirectly infringing at least claim 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, & LG Watch Sport, LG Watch 7) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that LG is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '287 patent and LG is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. LG have caused damage to Golden, which

90

infringement and damage will continue unless and until LG is enjoined. **Exhibit N:**

**Claim Chart for LG Electronics, USA, Inc.**

164.   On information and belief, LG is jointly, directly and/or indirectly

infringing at least claim 5 of the '287 patent in this judicial district and elsewhere

in South Carolina and the United States by, among other things, making, using,

offering for sale, selling and/or importing computerized communications devices

(i.e. LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG

Watch 7) included without limitation Plaintiff's CMDC's global positioning

system (GPS) used with CMDC devices for locating and tracking; the CMDC's

internet used with CMDC devices for mobile internet to fit the dimensions of a

CMDC device; the CMDC's central processing unit used with CMDC devices for

mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical /

biological monitoring used with CMDC devices for monitoring human heartrate;

the CMDC's radio frequency near-field communication (NFC) used with CMDC

devices for short-range reading of NFC tags; the CMDC's lock disabling

mechanism used with CMDC devices for locking the CMDC device after several

failed attempts to open the CMDC device; and, the CMDC's biometric

identification (i.e. fingerprint, facial) used with CMDC devices for identifying an

authorized user of the CMDC device. As set forth in Golden's preliminary

infringement contentions that LG is making, using, offering for sale, selling and/or

importing of the CMDC device have at a minimum directly infringed the '287 patent and LG is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. LG have caused damage to Golden, which infringement and damage will continue unless and until LG is enjoined.

166.   The alleged infringement of LG identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

166.   On information and belief, Qualcomm is jointly, directly and/or indirectly infringing at least claim 4 & 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling certain processing devices as Central Processing Units (i.e. Qualcomm's Snapdragon 5 Series, 6 Series, 7 Series, & 8 Series) for system-on-a-chip application processing for at least Apple, Samsung, LG, Motorola, and Panasonic; included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Qualcomm is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '287 patent and Qualcomm is thereby liable for infringement of the '287 patent pursuant to 35

U.S.C. § 271. Qualcomm have caused damage to Golden, which infringement and damage will continue unless and until Qualcomm is enjoined. **Exhibit O: Claim Chart for Qualcomm Inc.**

167.    On information and belief, Qualcomm is jointly, directly and/or indirectly infringing at least claim 4 & 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling certain processing devices as Central Processing Units (i.e. Qualcomm's Snapdragon 5 Series, 6 Series, 7 Series, & 8 Series) for system-on-a-chip application processing for at least Apple, Samsung, LG, Motorola, and Panasonic; included without limitation Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices (i.e. Apple, Samsung, LG, Motorola, and Panasonic) for mobile application processing i.e. system-on-a-chip (SoC);

> Qualcomm announced it was developing the Scorpion central processing unit (CPU) in November 2007. The following month, Qualcomm acquired Airgo Networks for an undisclosed amount; it said Airgo's 802.11a/b/g and 802.11n Wi-Fi technology would be integrated with the Snapdragon product suite. The Snapdragon system on chip (SoC) was announced in November 2006 and included the Scorpion processor, as well as other semiconductors. The first Snapdragon shipments were of the QSD8250 in November 2007.

The CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Qualcomm is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '287 patent and Qualcomm is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Qualcomm have caused damage to Golden, which infringement and damage will continue unless and until Qualcomm is enjoined.

168.    The alleged infringement of Qualcomm identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

169.    On information and belief, Motorola is jointly, directly and/or indirectly infringing at least claim 5 of the '287 patent in this judicial district and

elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Motorola is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '287 patent and Motorola is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Motorola have caused damage to Golden, which infringement and damage will continue unless and until Motorola is enjoined. **Exhibit P: Claim Chart for Motorola Solutions Inc. (Motorola Inc.)**

170.    On information and belief, Motorola is jointly, directly and/or indirectly infringing at least claim 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series) included without limitation Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical /

biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Motorola is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '287 patent and Motorola is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Motorola have caused damage to Golden, which infringement and damage will continue unless and until Motorola is enjoined.

171.    The alleged infringement of Motorola identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

172.    On information and belief, Panasonic is jointly, directly and/or indirectly infringing at least claim 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making,

using, offering for sale, selling and/or importing computerized communications devices (i.e. TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Panasonic is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '287 patent and Panasonic is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Panasonic have caused damage to Golden, which infringement and damage will continue unless and until Panasonic is enjoined. **Exhibit Q: Claim Chart for Panasonic Corporation**

173.   On information and belief, Panasonic is jointly, directly and/or indirectly infringing at least claim 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone) included without limitation Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the

CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Panasonic is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '287 patent and Panasonic is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Panasonic have caused damage to Golden, which infringement and damage will continue unless and until Panasonic is enjoined.

174.    The alleged infringement of Panasonic identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

175.    On information and belief, AT&T is jointly, directly and/or indirectly infringing at least claims 4 & 5 of the '287 patent in this judicial district and

elsewhere in South Carolina and the United States by, among other things, *using, offering for sale, selling* and/or importing computerized communications devices (i.e. Apple, Samsung, LG, Motorola, and Panasonic unlocked smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that AT&T is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and AT&T is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. AT&T have caused damage to Golden, which infringement and damage will continue unless and until AT&T is enjoined.

176.    On information and belief, AT&T is jointly, directly and/or indirectly infringing at least claims 4 & 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, *using, offering for sale, or selling* at least one of Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C

series, Panasonic Power & ToughPad FZ-F1 smartphones that includes, without limitation the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that AT&T is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and AT&T is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. AT&T have caused damage to Golden, which infringement and damage will continue unless and until AT&T is enjoined.

177.   The alleged infringement of AT&T identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering

the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

178.    On information and belief, Verizon is jointly, directly and/or indirectly infringing at least claims 4 & 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, *using, offering for sale, selling* and/or importing computerized communications devices (i.e. Apple, Samsung, LG, Motorola, and Panasonic unlocked smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Verizon is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and Verizon is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Verizon have caused damage to Golden, which infringement and damage will continue unless and until Verizon is enjoined.

179.    On information and belief, Verizon is jointly, directly and/or indirectly infringing at least one claim of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, *using, offering for sale, or selling* at least one of Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple

Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10

series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy

Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG &

Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One

series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C

series, Panasonic Power & ToughPad FZ-F1 smartphones that includes, without

limitation the CMDC's global positioning system (GPS) used with CMDC devices

for locating and tracking; the CMDC's internet used with CMDC devices for

mobile internet to fit the dimensions of a CMDC device; the CMDC's central

processing unit used with CMDC devices for mobile application processing i.e.

system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with

CMDC devices for monitoring human heartrate; the CMDC's radio frequency

near-field communication (NFC) used with CMDC devices for short-range reading

of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for

locking the CMDC device after several failed attempts to open the CMDC device;

and, the CMDC's biometric identification (i.e. fingerprint, facial) used with

CMDC devices for identifying an authorized user of the CMDC device. As set

forth in Golden's preliminary infringement contentions that Verizon is using,

offering for sale, selling and/or importing of the CMDC device have at a minimum

directly and/or indirectly infringed the '287 patent and Verizon is thereby liable for

infringement of the '287 patent pursuant to 35 U.S.C. § 271. Verizon have caused damage to Golden, which infringement and damage will continue unless and until Verizon is enjoined.

180.    The alleged infringement of Verizon identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

181.    On information and belief, Sprint is jointly, directly and/or indirectly infringing at least claims 4 & 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, *using, offering for sale, selling* and/or importing computerized communications devices (i.e. Apple, Samsung, LG, Motorola unlocked, and Panasonic unlocked smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Sprint is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and Sprint is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Sprint have caused damage to Golden, which infringement and damage will continue unless and until Sprint is enjoined.

182.   On information and belief, Sprint jointly, is directly and/or indirectly infringing at least one claim of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, offering for sale, or selling_  least one of Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphones that includes, without limitation the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device;

and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Sprint is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and Sprint is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Sprint have caused damage to Golden, which infringement and damage will continue unless and until Sprint is enjoined.

183.   The alleged infringement of Sprint identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

184.   On information and belief, T-Mobile is jointly, directly and/or indirectly infringing at least claims 4 & 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, *using, offering for sale, selling* and/or importing computerized communications devices (i.e. Apple, Samsung, LG, Motorola, and Panasonic unlocked smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that

T-Mobile is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and T-Mobile is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. T-Mobile have caused damage to Golden, which infringement and damage will continue unless and until T-Mobile is enjoined.

185.    On information and belief, T-Mobile is jointly, directly and/or indirectly infringing at least one claim of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, offering for sale, or selling_ at least one of Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphones that includes, without limitation the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e.

system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that T-Mobile is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and T-Mobile is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. T-Mobile have caused damage to Golden, which infringement and damage will continue unless and until T-Mobile is enjoined.

186.    The alleged infringement of T-Mobile identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

187.    On information and belief, Ford is jointly, directly and/or indirectly infringing at least claims 1 & 5 of the '287 patent in this judicial district and

elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Ford is using the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and Ford is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Ford have caused damage to Golden, which infringement and damage will continue unless and until Ford is enjoined. **Exhibit R: Claim Chart for Ford Global Technologies, LLC**

188.   On information and belief, Ford is jointly, directly and/or indirectly infringing at least claims 1 & 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-

F1 smartphone communication devices that includes, without limitation the CMDC's remote lock/unlock used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Ford is using the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and Ford is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Ford have caused

damage to Golden, which infringement and damage will continue unless and until Ford is enjoined.

189.   The alleged infringement of Ford identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

190.   On information and belief, Fairway Ford is jointly, directly and/or indirectly infringing at least claims 1 & 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Fairway Ford is using the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and Fairway Ford is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Fairway Ford have caused damage to Golden, which infringement and damage will continue unless and until Fairway Ford is enjoined. **Exhibit R: Claim Chart for Fairway Ford Lincoln of Greenville**

191.   On information and belief, Fairway Ford is jointly, directly and/or indirectly infringing at least claims 1 & 5 of the '287 patent in this judicial district

and elsewhere in South Carolina and the United States by, among other things,

_using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's

iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR

series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10

series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &

Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35,

V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto

Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's

TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-

F1 smartphone communication devices that includes, without limitation the

CMDC's remote lock/unlock used with CMDC devices for locking and unlocking

vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for

starting and stopping the vehicle's engine; the CMDC's remote operating systems

controls used with CMDC devices for operating the heating and cooling controls;

the CMDC's global positioning system (GPS) used with CMDC devices for

locating and tracking the vehicle; the CMDC's internet used with CMDC devices

for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC

device; the CMDC's central processing unit used with CMDC devices for mobile

application processing i.e. system-on-a-chip (SoC); the CMDC's chemical /

biological monitoring used with CMDC devices for monitoring human heartrate;

the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Fairway Ford is using the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and Fairway Ford is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Fairway Ford have caused damage to Golden, which infringement and damage will continue unless and until Fairway Ford is enjoined.

192.    The alleged infringement of Fairway Ford identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

193.    On information and belief, GM is jointly, directly and/or indirectly infringing at least claims 1 & 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches)

including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that GM is using the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and GM is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. GM have caused damage to Golden, which infringement and damage will continue unless and until GM is enjoined. **Exhibit S: Claim Chart for General Motors Company**

194.    On information and belief, GM is jointly, directly and/or indirectly infringing at least claims 1 & 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's remote lock/unlock used with CMDC devices for locking and unlocking

vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that GM is using the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and GM is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. GM have caused damage to Golden, which infringement and damage will continue unless and until GM is enjoined.

195.   The alleged infringement of GM identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

196.   On information and belief, Whitaker Chevrolet is jointly, directly and/or indirectly infringing at least claims 1 & 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Whitaker Chevrolet is using the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and Whitaker Chevrolet is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Whitaker Chevrolet have caused damage to Golden, which infringement and damage will continue unless and until Whitaker Chevrolet is enjoined. **Exhibit S: Claim Chart for Kevin Whitaker Chevrolet**

197.   On information and belief, Whitaker Chevrolet is jointly, directly and/or indirectly infringing at least claims 1 & 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, *using, with its vehicles at least one of the alleged infringing devices* i.e.

Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's remote lock/unlock used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling

mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Whitaker Chevrolet is using the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and Whitaker Chevrolet is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Whitaker Chevrolet have caused damage to Golden, which infringement and damage will continue unless and until Whitaker Chevrolet is enjoined.

198.    The alleged infringement of Whitaker Chevrolet identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

199.    On information and belief, FCA is jointly, directly and/or indirectly infringing at least claims 1 & 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's

preliminary infringement contentions that FCA is using the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and FCA is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. FCA have caused damage to Golden, which infringement and damage will continue unless and until FCA is enjoined. **Exhibit T: Claim Chart for FCA US LLC**

200.   On information and belief, FCA is jointly, directly and/or indirectly infringing at least claims 1 & 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, *using, with its vehicles at least one of the alleged infringing devices* i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's remote lock/unlock used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems

controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that FCA is using the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and FCA is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. FCA have caused damage to Golden, which infringement and damage will continue unless and until FCA is enjoined.

201.   The alleged infringement of FCA identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering

the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

202.   On information and belief, Big O is jointly, directly and/or indirectly infringing at least claims 1 & 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Big O is using the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and Big O is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Big O have caused damage to Golden, which infringement and damage will continue unless and until Big O is enjoined. **Exhibit T: Claim Chart for Big O Dodge Jeep RAM**

203.   On information and belief, Big O is jointly, directly and/or indirectly infringing at least claims 1 & 5 of the '287 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series,

Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung

Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG

G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, &

Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's

TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-

F1 smartphone communication devices that includes, without limitation the

CMDC's remote lock/unlock used with CMDC devices for locking and unlocking

vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for

starting and stopping the vehicle's engine; the CMDC's remote operating systems

controls used with CMDC devices for operating the heating and cooling controls;

the CMDC's global positioning system (GPS) used with CMDC devices for

locating and tracking the vehicle; the CMDC's internet used with CMDC devices

for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC

device; the CMDC's central processing unit used with CMDC devices for mobile

application processing i.e. system-on-a-chip (SoC); the CMDC's chemical /

biological monitoring used with CMDC devices for monitoring human heartrate;

the CMDC's radio frequency near-field communication (NFC) used with CMDC

devices for short-range reading of NFC tags; the CMDC's lock disabling

mechanism used with CMDC devices for locking the CMDC device after several

failed attempts to open the CMDC device; and, the CMDC's biometric

identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Big O is using the CMDC device have at a minimum directly and/or indirectly infringed the '287 patent and Big O is thereby liable for infringement of the '287 patent pursuant to 35 U.S.C. § 271. Big O have caused damage to Golden, which infringement and damage will continue unless and until Big O is enjoined.

204.    The alleged infringement of Big O identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

### COUNT II
### (Infringement of the '439 Patent)

205.    Golden realleges and incorporates herein the allegations set forth in Paragraphs 1-204.

206.    Plaintiff alleges that at least one of the Defendants named in this complaint has infringed at least independent claims 13, 14, 16, 19, 20, 22 & 23 of the '439 patent that covers Plaintiff's communication, monitoring, detecting and controlling (CMDC) device. **Exhibit U: Claim Chart for the '439 Patent**

207.    On information and belief, Apple is jointly, directly and/or indirectly infringing at least claims 13, 14, 16, 17, 19, 20, 22, & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Apple is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '439 patent and Apple is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Apple have caused damage to Golden, which infringement and damage will continue unless and until Apple is enjoined. **Exhibit L: Claim Chart for Apple Inc.**

208.    On information and belief, Apple is jointly, directly and/or indirectly infringing at least claims 13, 14, 16, 17, 19, 20, 22, & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5) included without limitation Plaintiff's CMDC's global

123

positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Apple is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '439 patent and Apple is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Apple have caused damage to Golden, which infringement and damage will continue unless and until Apple is enjoined.

209.   The alleged infringement of Apple identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a

permanent injunction is warranted and such a remedy would be in the public interest.

210.    On information and belief, Samsung is jointly, directly and/or indirectly infringing at least claims 13, 14, 19, 20, 22 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Samsung is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '439 patent and Samsung is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Samsung have caused damage to Golden, which infringement and damage will continue unless and until Samsung is enjoined. **Exhibit M: Claim Chart for Samsung Electronics, USA.**

211.    On information and belief, Samsung is jointly, directly and/or indirectly infringing at least claims 13, 14, 19, 20, 22 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing

computerized communications devices (i.e. Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series) included without limitation Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Samsung is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '439 patent and Samsung is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Samsung have caused damage to Golden, which infringement and damage will continue unless and until Samsung is enjoined.

212.    The alleged infringement of Samsung identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

213.    On information and belief, LG is jointly, directly and/or indirectly infringing at least claims 13, 14, 19, 20, 22 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that LG is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '439 patent and LG is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. LG have caused damage to Golden, which infringement and damage will continue unless and until LG is enjoined. **Exhibit N: Claim Chart for LG Electronics, USA, Inc.**

214.    On information and belief, LG is jointly, directly and/or indirectly infringing at least claims 13, 14, 19, 20, 22 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other

things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7) included without limitation Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that LG is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '439 patent and LG is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. LG have caused damage to Golden, which infringement and damage will continue unless and until LG is enjoined.

215.    The alleged infringement of LG identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

216.    On information and belief, Qualcomm is jointly, directly and/or indirectly infringing at least claim 22 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling certain processing devices as Central Processing Units (i.e. Qualcomm's Snapdragon 5 Series, 6 Series, 7 Series, & 8 Series) for system-on-a-chip application processing for at least Apple, Samsung, LG, Motorola, and Panasonic; included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Qualcomm is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '439 patent and Qualcomm is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Qualcomm have caused damage to Golden, which infringement and damage will continue unless and until Qualcomm is enjoined. **Exhibit O: Claim Chart for Qualcomm Inc.**

217.    On information and belief, Qualcomm is jointly, directly and/or indirectly infringing at least claim 22 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling certain processing devices as Central Processing Units (i.e. Qualcomm's Snapdragon 5 Series, 6 Series, 7 Series, & 8 Series) for system-on-a-chip application processing for at least Apple, Samsung, LG, Motorola, and Panasonic; included without limitation Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Qualcomm is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly

infringed the '439 patent and Qualcomm is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Qualcomm have caused damage to Golden, which infringement and damage will continue unless and until Qualcomm is enjoined.

218.   The alleged infringement of Qualcomm identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

219.   On information and belief, Motorola is jointly, directly and/or indirectly infringing at least claims 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Motorola is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '439 patent and Motorola is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Motorola have caused damage to Golden, which infringement and damage will continue unless and until

Motorola is enjoined. **Exhibit P: Claim Chart for Motorola Solutions Inc.** (Motorola Inc.)

220. On information and belief, Motorola is jointly, directly and/or indirectly infringing at least claims 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series) included without limitation Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Motorola is making, using, offering for sale, selling

132

and/or importing of the CMDC device have at a minimum directly infringed the '439 patent and Motorola is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Motorola have caused damage to Golden, which infringement and damage will continue unless and until Motorola is enjoined.

221.    The alleged infringement of Motorola identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

222.    On information and belief, Panasonic is jointly, directly and/or indirectly infringing at least claims 13, 22, & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Panasonic is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '439 patent and Panasonic is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Panasonic have caused damage to Golden, which infringement

and damage will continue unless and until Panasonic is enjoined. **Exhibit Q:**

**Claim Chart for Panasonic Corporation**

223.   On information and belief, Panasonic is jointly, directly and/or indirectly infringing at least claims 13, 22, & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone) included without limitation Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Panasonic is making, using, offering for

sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '439 patent and Panasonic is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Panasonic have caused damage to Golden, which infringement and damage will continue unless and until Panasonic is enjoined.

224.    The alleged infringement of Panasonic identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

225.    On information and belief, AT&T is jointly, directly and/or indirectly infringing at least claims 13, 14, 16, 19, 20, 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing computerized communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that AT&T is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '439 patent and AT&T is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. AT&T have caused damage to

135

Golden, which infringement and damage will continue unless and until AT&T is enjoined.

226. On information and belief, AT&T is jointly, directly and/or indirectly infringing at least claims 13, 14, 16, 19, 20, 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, offering for sale, or selling_ at least one of Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphones that includes, without limitation the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC

devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that AT&T is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '439 patent and AT&T is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. AT&T have caused damage to Golden, which infringement and damage will continue unless and until AT&T is enjoined.

227.    The alleged infringement of AT&T identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

228.    On information and belief, Verizon is jointly, directly and/or indirectly infringing at least claims 13, 14, 16, 19, 20, 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing computerized communications devices (i.e. smartphones, laptops, tablets, smartwatches)

including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Verizon is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '439 patent and Verizon is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Verizon have caused damage to Golden, which infringement and damage will continue unless and until Verizon is enjoined.

229.    On information and belief, Verizon is jointly, directly and/or indirectly infringing at least claims 13, 14, 16, 19, 20, 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, *using, offering for sale, or selling* at least one of Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphones that includes without limitation the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's

internet used with CMDC devices for mobile internet to fit the dimensions of a

CMDC device; the CMDC's central processing unit used with CMDC devices for

mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical /

biological monitoring used with CMDC devices for monitoring human heartrate;

the CMDC's radio frequency near-field communication (NFC) used with CMDC

devices for short-range reading of NFC tags; the CMDC's lock disabling

mechanism used with CMDC devices for locking the CMDC device after several

failed attempts to open the CMDC device; and, the CMDC's biometric

identification (i.e. fingerprint, facial) used with CMDC devices for identifying an

authorized user of the CMDC device. As set forth in Golden's preliminary

infringement contentions that Verizon is using, offering for sale, selling and/or

importing of the CMDC device have at a minimum directly and/or indirectly

infringed the '439 patent and Verizon is thereby liable for infringement of the '439

patent pursuant to 35 U.S.C. § 271. Verizon have caused damage to Golden, which

infringement and damage will continue unless and until Verizon is enjoined.

230.   The alleged infringement of Verizon identified in this Count has

caused irreparable injury to Golden for which remedies at law are inadequate.

Considering the balance of the hardships between the parties, a remedy in equity,

such as a permanent injunction is warranted and such a remedy would be in the

public interest.

231.  On information and belief, Sprint is jointly, directly and/or indirectly infringing at least claims 13, 14, 16, 19, 20, 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing computerized communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Sprint is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '439 patent and Sprint is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Sprint have caused damage to Golden, which infringement and damage will continue unless and until Sprint is enjoined.

232.  On information and belief, Sprint is jointly, directly and/or indirectly infringing at least claims 13, 14, 16, 19, 20, 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, *using, offering for sale, or selling* at least one of Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, &

140

Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphones that includes, without limitation the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Sprint is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '439 patent and Sprint is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Sprint have caused damage to Golden, which infringement and damage will continue unless and until Sprint is enjoined.

233.   The alleged infringement of Sprint identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

234.   On information and belief, T-Mobile is jointly, directly and/or indirectly infringing at least claims 13, 14, 16, 19, 20, 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing computerized communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that T-Mobile is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '439 patent and T-Mobile is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. T-Mobile have caused damage to Golden, which infringement and damage will continue unless and until T-Mobile is enjoined.

235.   On information and belief, T-Mobile is jointly, directly and/or indirectly infringing at least claims 13, 14, 16, 19, 20, 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by,

among other things, _using, offering for sale, or selling_ at least one of Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphones that includes, without limitation the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary

infringement contentions that T-Mobile is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '439 patent and T-Mobile is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. T-Mobile have caused damage to Golden, which infringement and damage will continue unless and until T-Mobile is enjoined.

236.   The alleged infringement of T-Mobile identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

237.   On information and belief, Ford is jointly, directly and/or indirectly infringing at least claims 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Ford is using the CMDC device have at a minimum directly and/or indirectly infringed the '439 patent and Ford is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Ford have caused damage to Golden, which infringement and damage will continue unless

and until Ford is enjoined. **Exhibit R: Claim Chart for Ford Global Technologies, LLC**

238.    On information and belief, Ford is jointly, directly and/or indirectly infringing at least claims 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's remote lock/unlock used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices

for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Ford is using the CMDC device have at a minimum directly and/or indirectly infringed the '439 patent and Ford is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Ford have caused damage to Golden, which infringement and damage will continue unless and until Ford is enjoined.

239.    The alleged infringement of Ford identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

240.   On information and belief, Fairway Ford is jointly, directly and/or indirectly infringing at least claims 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Fairway Ford is using the CMDC device have at a minimum directly and/or indirectly infringed the '439 patent and Fairway Ford is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Fairway Ford have caused damage to Golden, which infringement and damage will continue unless and until Fairway Ford is enjoined.

**Exhibit R: Claim Chart for Fairway Ford Lincoln of Greenville**

241.   On information and belief, Fairway Ford is jointly, directly and/or indirectly infringing at least claims 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto

Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's remote lock/unlock used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Fairway Ford is using the CMDC device have at a

minimum directly and/or indirectly infringed the '439 patent and Fairway Ford is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Fairway Ford have caused damage to Golden, which infringement and damage will continue unless and until Fairway Ford is enjoined.

242.   The alleged infringement of Fairway Ford identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

243.   On information and belief, GM is jointly, directly and/or indirectly infringing at least claims 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that GM is using the CMDC device have at a minimum directly and/or indirectly infringed the '439 patent and GM is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. GM have caused damage to Golden, which infringement and damage will continue unless and until GM is enjoined. **Exhibit S: Claim Chart for General Motors Company**

244.   On information and belief, GM is jointly, directly and/or indirectly infringing at least claims 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's remote lock/unlock used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile

application processing i.e. system-on-a-chip (SoC); the CMDC's chemical /
biological monitoring used with CMDC devices for monitoring human heartrate;
the CMDC's radio frequency near-field communication (NFC) used with CMDC
devices for short-range reading of NFC tags; the CMDC's lock disabling
mechanism used with CMDC devices for locking the CMDC device after several
failed attempts to open the CMDC device; and, the CMDC's biometric
identification (i.e. fingerprint, facial) used with CMDC devices for identifying an
authorized user of the CMDC device. As set forth in Golden's preliminary
infringement contentions that GM is using the CMDC device have at a minimum
directly and/or indirectly infringed the '439 patent and GM is thereby liable for
infringement of the '439 patent pursuant to 35 U.S.C. § 271. GM have caused
damage to Golden, which infringement and damage will continue unless and until
GM is enjoined.

245.   The alleged infringement of GM identified in this Count has caused
irreparable injury to Golden for which remedies at law are inadequate. Considering
the balance of the hardships between the parties, a remedy in equity, such as a
permanent injunction is warranted and such a remedy would be in the public
interest.

246.   On information and belief, Whitaker Chevrolet is jointly, directly
and/or indirectly infringing at least claims 22 & 23 of the '439 patent in this

judicial district and elsewhere in South Carolina and the United States by, among

other things, using communications devices (i.e. smartphones, laptops, tablets,

smartwatches) including without limitation the CMDC device. As set forth in

Golden's preliminary infringement contentions that Whitaker Chevrolet is using

the CMDC device have at a minimum directly and/or indirectly infringed the '439

patent and Whitaker Chevrolet is thereby liable for infringement of the '439 patent

pursuant to 35 U.S.C. § 271. Whitaker Chevrolet have caused damage to Golden,

which infringement and damage will continue unless and until Whitaker Chevrolet

is enjoined. **Exhibit S: Claim Chart for Kevin Whitaker Chevrolet**

247.   On information and belief, Whitaker Chevrolet is jointly, directly

and/or indirectly infringing at least claims 22 & 23 of the '439 patent in this

judicial district and elsewhere in South Carolina and the United States by, among

other things, _using, with its vehicles at least one of the alleged infringing devices_

i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series,

iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's

Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S

series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20,

V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7;

Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series;

and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power &

ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's remote lock/unlock used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Whitaker Chevrolet is using the CMDC device have at a minimum directly and/or indirectly infringed the '439 patent and Whitaker Chevrolet is thereby liable for infringement of the '439 patent pursuant

to 35 U.S.C. § 271. Whitaker Chevrolet have caused damage to Golden, which infringement and damage will continue unless and until Whitaker Chevrolet is enjoined.

248.   The alleged infringement of Whitaker Chevrolet identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

249.   On information and belief, FCA is jointly, directly and/or indirectly infringing at least claims 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that FCA is using the CMDC device have at a minimum directly and/or indirectly infringed the '439 patent and FCA is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. FCA have caused damage to Golden, which infringement and damage will continue unless and until FCA is enjoined. **Exhibit T: Claim Chart for FCA US LLC**

250.   On information and belief, FCA is jointly, directly and/or indirectly infringing at least claims 22 & 23 of the '439 patent in this judicial district and

elsewhere in South Carolina and the United States by, among other things, *using, with its vehicles at least one of the alleged infringing devices* i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's remote lock/unlock used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate;

the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that FCA is using the CMDC device have at a minimum directly and/or indirectly infringed the '439 patent and FCA is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. FCA have caused damage to Golden, which infringement and damage will continue unless and until FCA is enjoined.

251.   The alleged infringement of FCA identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

252.   On information and belief, Big O is jointly, directly and/or indirectly infringing at least claims 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches)

including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Big O is using the CMDC device have at a minimum directly and/or indirectly infringed the '439 patent and Big O is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Big O have caused damage to Golden, which infringement and damage will continue unless and until Big O is enjoined. **Exhibit T: Claim Chart for Big O Dodge Jeep RAM**

253.    On information and belief, Big O is jointly, directly and/or indirectly infringing at least claims 22 & 23 of the '439 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's remote lock/unlock used with CMDC devices for locking and unlocking

vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Big O is using the CMDC device have at a minimum directly and/or indirectly infringed the '439 patent and Big O is thereby liable for infringement of the '439 patent pursuant to 35 U.S.C. § 271. Big O have caused damage to Golden, which infringement and damage will continue unless and until Big O is enjoined.

158

254.    The alleged infringement of Big O identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

## COUNT III
### (Infringement of the '189 Patent)

255.    Golden realleges and incorporates herein the allegations set forth in Paragraphs 1-254.

256.    Plaintiff alleges that at least one of the Defendants named in this complaint has infringed at least independent claims 1-5, 7, & 8 of the '189 patent that covers Plaintiff's communication, monitoring, detecting and controlling (CMDC) device. **Exhibit V: Claim Chart for the '189 Patent**

257.    On information and belief, Apple is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Apple is making, using, offering for sale, selling

and/or importing of the CMDC device have at a minimum directly infringed the '189 patent and Apple is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Apple have caused damage to Golden, which infringement and damage will continue unless and until Apple is enjoined. **Exhibit L: Claim Chart for Apple Inc.**

258.    On information and belief, Apple is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5) included without limitation Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device;

160

and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Apple is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '189 patent and Apple is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Apple have caused damage to Golden, which infringement and damage will continue unless and until Apple is enjoined.

259.    The alleged infringement of Apple identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

260.    On information and belief, Samsung is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series) included without limitation Plaintiff's CMDC

devices. As set forth in Golden's preliminary infringement contentions that Samsung is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '189 patent and Samsung is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Samsung have caused damage to Golden, which infringement and damage will continue unless and until Samsung is enjoined. **Exhibit M: Claim Chart for Samsung Electronics, USA.**

261.   On information and belief, Samsung is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series) included without limitation Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field

communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Samsung is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '189 patent and Samsung is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Samsung have caused damage to Golden, which infringement and damage will continue unless and until Samsung is enjoined.

262.    The alleged infringement of Samsung identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

263.    On information and belief, LG is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications

163

devices (i.e. LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7)) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that LG is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '189 patent and LG is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. LG have caused damage to Golden, which infringement and damage will continue unless and until LG is enjoined. **Exhibit N:**

**Claim Chart for LG Electronics, USA, Inc.**

264.    On information and belief, LG is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7)) included without limitation Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field

communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that LG is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '189 patent and LG is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. LG have caused damage to Golden, which infringement and damage will continue unless and until LG is enjoined.

265.    The alleged infringement of LG identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

266.    On information and belief, Qualcomm is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling certain processing devices as Central Processing Units (i.e. Qualcomm's Snapdragon 5 Series, 6 Series, 7 Series,

& 8 Series) for system-on-a-chip application processing for at least Apple, Samsung, LG, Motorola, and Panasonic; included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Qualcomm is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '189 patent and Qualcomm is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Qualcomm have caused damage to Golden, which infringement and damage will continue unless and until Qualcomm is enjoined. **Exhibit O: Claim Chart for Qualcomm Inc.**

267.    On information and belief, Qualcomm is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling certain processing devices as Central Processing Units (i.e. Qualcomm's Snapdragon 5 Series, 6 Series, 7 Series, & 8 Series) for system-on-a-chip application processing for at least Apple, Samsung, LG, Motorola, and Panasonic; included without limitation Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip

(SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Qualcomm is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '189 patent and Qualcomm is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Qualcomm have caused damage to Golden, which infringement and damage will continue unless and until Qualcomm is enjoined.

268.    The alleged infringement of Qualcomm identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

269.    On information and belief, Motorola is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial

district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Motorola is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '189 patent and Motorola is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Motorola have caused damage to Golden, which infringement and damage will continue unless and until Motorola is enjoined. **Exhibit P: Claim Chart for Motorola Solutions Inc. (Motorola Inc.)**

270.    On information and belief, Motorola is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series) included without limitation Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for

mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Motorola is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '189 patent and Motorola is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Motorola have caused damage to Golden, which infringement and damage will continue unless and until Motorola is enjoined.

271.    The alleged infringement of Motorola identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

272.    On information and belief, Panasonic is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial

district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Panasonic is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '189 patent and Panasonic is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Panasonic have caused damage to Golden, which infringement and damage will continue unless and until Panasonic is enjoined. **Exhibit Q:**

**Claim Chart for Panasonic Corporation**

273.    On information and belief, Panasonic is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone) included without limitation Plaintiff's CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing

170

unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Panasonic is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '189 patent and Panasonic is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Panasonic have caused damage to Golden, which infringement and damage will continue unless and until Panasonic is enjoined.

274.    The alleged infringement of Panasonic identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

275.   On information and belief, AT&T is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing computerized communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that AT&T is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and AT&T is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. AT&T have caused damage to Golden, which infringement and damage will continue unless and until AT&T is enjoined.

276.   On information and belief, AT&T is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, *using, offering for sale, or selling* at least one of Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One

series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphones that includes, without limitation the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that AT&T is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and AT&T is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. AT&T have caused damage to Golden, which infringement and damage will continue unless and until AT&T is enjoined.

277.     The alleged infringement of AT&T identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

278.     On information and belief, Verizon is jointly, directly and/or indirectly infringing at least one claim of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing computerized communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Verizon is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and Verizon is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Verizon have caused damage to Golden, which infringement and damage will continue unless and until Verizon is enjoined.

279.     On information and belief, Verizon is jointly, directly and/or indirectly infringing at least 1-5, 7, & 8 claim of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, offering for sale, or selling_ at least one of Apple's iPhone 7 series,

iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphones that includes, without limitation the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Verizon is using, offering for sale, selling and/or

importing of the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and Verizon is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Verizon have caused damage to Golden, which infringement and damage will continue unless and until Verizon is enjoined.

280.  The alleged infringement of Verizon identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

281.  On information and belief, Sprint is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing computerized communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Sprint is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and Sprint is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Sprint have caused damage to Golden, which infringement and damage will continue unless and until Sprint is enjoined.

282.   On information and belief, Sprint is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, offering for sale, or selling_ at least one of Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphones that includes, without limitation the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device;

and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Sprint is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and Sprint is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Sprint have caused damage to Golden, which infringement and damage will continue unless and until Sprint is enjoined.

283.    The alleged infringement of Sprint identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

284.    On information and belief, T-Mobile is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing computerized communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that T-Mobile is using, offering for sale,

selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and T-Mobile is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. T-Mobile have caused damage to Golden, which infringement and damage will continue unless and until T-Mobile is enjoined.

285.   On information and belief, T-Mobile is jointly, directly and/or indirectly infringing at least claims 1-5, 7, & 8 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, *using, offering for sale, or selling* at least one of Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphones that includes, without limitation the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application

processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that T-Mobile is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and T-Mobile is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. T-Mobile have caused damage to Golden, which infringement and damage will continue unless and until T-Mobile is enjoined.

286.   The alleged infringement of T-Mobile identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

287.    On information and belief, Ford is jointly, directly and/or indirectly infringing at least claim 1 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Ford is using the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and Ford is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Ford have caused damage to Golden, which infringement and damage will continue unless and until Ford is enjoined. **Exhibit R: Claim Chart for Ford Global Technologies, LLC**

288.    On information and belief, Ford is jointly, directly and/or indirectly infringing at least claim 1 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, *using, with its vehicles at least one of the alleged infringing devices* i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series,

Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's remote lock/unlock used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Ford is using the CMDC device have at a minimum

182

directly and/or indirectly infringed the '189 patent and Ford is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Ford have caused damage to Golden, which infringement and damage will continue unless and until Ford is enjoined.

289.    The alleged infringement of Ford identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

290.    On information and belief, Fairway Ford is jointly, directly and/or indirectly infringing at least claim 1 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Fairway Ford is using the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and Fairway Ford is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Fairway Ford have caused damage to Golden, which infringement and damage will continue unless and until Fairway Ford is enjoined. **Exhibit R: Claim Chart for Fairway Ford Lincoln of Greenville**

291.    On information and belief, Fairway Ford is jointly, directly and/or indirectly infringing at least claim 1 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's remote lock/unlock used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile

application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Fairway Ford is using the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and Fairway Ford is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Fairway Ford have caused damage to Golden, which infringement and damage will continue unless and until Fairway Ford is enjoined.

292.    The alleged infringement of Fairway Ford identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

293.    On information and belief, GM is jointly, directly and/or indirectly infringing at least claim 1 of the '189 patent in this judicial district and elsewhere

185

in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that GM is using the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and GM is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. GM have caused damage to Golden, which infringement and damage will continue unless and until GM is enjoined. **Exhibit S: Claim Chart for General Motors Company**

294.    On information and belief, GM is jointly, directly and/or indirectly infringing at least claim 1 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone

communication devices that includes, without limitation the CMDC's remote lock/unlock used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that GM is using the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and GM is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. GM have caused

damage to Golden, which infringement and damage will continue unless and until GM is enjoined.

295.  The alleged infringement of GM identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

296.  On information and belief, Whitaker Chevrolet is jointly, directly and/or indirectly infringing at least claim 1 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Whitaker Chevrolet is using the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and Whitaker Chevrolet is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Whitaker Chevrolet have caused damage to Golden, which infringement and damage will continue unless and until Whitaker Chevrolet is enjoined. **Exhibit S: Claim Chart for Kevin Whitaker Chevrolet**

297.  On information and belief, Whitaker Chevrolet is jointly, directly and/or indirectly infringing at least claim 1 of the '189 patent in this judicial

district and elsewhere in South Carolina and the United States by, among other things, *using, with its vehicles at least one of the alleged infringing devices* i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's remote lock/unlock used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate;

the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Whitaker Chevrolet is using the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and Whitaker Chevrolet is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Whitaker Chevrolet have caused damage to Golden, which infringement and damage will continue unless and until Whitaker Chevrolet is enjoined.

298.   The alleged infringement of Whitaker Chevrolet identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

299.   On information and belief, FCA is jointly, directly and/or indirectly infringing at least claim 1 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using

communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that FCA is using the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and FCA is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. FCA have caused damage to Golden, which infringement and damage will continue unless and until FCA is enjoined. **Exhibit T: Claim Chart for FCA US LLC**

300.    On information and belief, FCA is jointly, directly and/or indirectly infringing at least claim 1 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's remote lock/unlock used with CMDC devices for locking and unlocking vehicle doors; the

CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that FCA is using the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and FCA is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. FCA have caused damage to Golden, which infringement and damage will continue unless and until FCA is enjoined.

301.    The alleged infringement of FCA identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

302.    On information and belief, Big O is jointly, directly and/or indirectly infringing at least claim 1 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Big O is using the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and Big O is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Big O have caused damage to Golden, which infringement and damage will continue unless and until Big O is enjoined. **Exhibit T: Claim Chart for Big O Dodge Jeep RAM**

303.    On information and belief, Big O is jointly, directly and/or indirectly infringing at least claim 1 of the '189 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7 series,

193

iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's remote lock/unlock used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's chemical / biological monitoring used with CMDC devices for monitoring human heartrate; the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling

mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Big O is using the CMDC device have at a minimum directly and/or indirectly infringed the '189 patent and Big O is thereby liable for infringement of the '189 patent pursuant to 35 U.S.C. § 271. Big O have caused damage to Golden, which infringement and damage will continue unless and until Big O is enjoined.

304.    The alleged infringement of Big O identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

## COUNT IV
**(Infringement of the '990 Patent)**

305.    Golden realleges and incorporates herein the allegations set forth in Paragraphs 1-304.

306.    Plaintiff alleges that at least one of the Defendants named in this complaint has infringed at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132,

134 & 125 of the '990 patent that covers Plaintiff's communication, monitoring, detecting and controlling (CMDC) device and locking mechanism. **Exhibit W: Claim Chart for the '990 Patent**

307. On information and belief, Apple is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Apple is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '990 patent and Apple is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Apple have caused damage to Golden, which infringement and damage will continue unless and until Apple is enjoined. **Exhibit L: Claim Chart for Apple Inc.**

308. On information and belief, Apple is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of

the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5) included without limitation Plaintiff's CMDC's multi-sensor detection system (i.e. home security system) used with CMDC devices for home monitoring; the CMDC's internal or external remote/electrical lock disabler used with CMDC devices for locking and unlocking home doors; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Apple is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly

infringed the '990 patent and Apple is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Apple have caused damage to Golden, which infringement and damage will continue unless and until Apple is enjoined.

309.    The alleged infringement of Apple identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

310.    On information and belief, Samsung is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Samsung is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '990 patent and Samsung is thereby liable for infringement of the '990 patent

pursuant to 35 U.S.C. § 271. Samsung have caused damage to Golden, which infringement and damage will continue unless and until Samsung is enjoined.

**Exhibit M: Claim Chart for Samsung Electronics, USA.**

311.   On information and belief, Samsung is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series) included without limitation Plaintiff's CMDC's multi-sensor detection system (i.e. home security system) used with CMDC devices for home monitoring; the CMDC's internal or external remote/electrical lock disabler used with CMDC devices for locking and unlocking home doors; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading

of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Samsung is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '990 patent and Samsung is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Samsung have caused damage to Golden, which infringement and damage will continue unless and until Samsung is enjoined.

312.    The alleged infringement of Samsung identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

313.    On information and belief, LG is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling

and/or importing computerized communications devices (i.e. LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7)) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that LG is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '990 patent and LG is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. LG have caused damage to Golden, which infringement and damage will continue unless and until LG is enjoined. **Exhibit N: Claim Chart for LG Electronics, USA, Inc.**

314.    On information and belief, LG is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7)) included without limitation Plaintiff's CMDC's multi-sensor detection system (i.e. home security system) used with CMDC devices for home monitoring; the CMDC's internal or external remote/electrical lock disabler used with CMDC devices for locking and unlocking home doors; the CMDC's global positioning system (GPS) used with

CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that LG is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '990 patent and LG is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. LG have caused damage to Golden, which infringement and damage will continue unless and until LG is enjoined.

315.    The alleged infringement of LG identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

316.    On information and belief, Qualcomm is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling certain processing devices as Central Processing Units (i.e. Qualcomm's Snapdragon 5 Series, 6 Series, 7 Series, & 8 Series) for system-on-a-chip application processing for at least Apple, Samsung, LG, Motorola, and Panasonic; included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Qualcomm is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '990 patent and Qualcomm is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Qualcomm have caused damage to Golden, which infringement and damage will continue unless and until Qualcomm is enjoined. **Exhibit O: Claim Chart for Qualcomm Inc.**

317.    On information and belief, Qualcomm is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale,

selling certain processing devices as Central Processing Units (i.e. Qualcomm's Snapdragon 5 Series, 6 Series, 7 Series, & 8 Series) for system-on-a-chip application processing for at least Apple, Samsung, LG, Motorola, and Panasonic; included without limitation Plaintiff's CMDC's multi-sensor detection system (i.e. home security system) used with CMDC devices for home monitoring; the CMDC's internal or external remote/electrical lock disabler used with CMDC devices for locking and unlocking home doors; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Qualcomm is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '990 patent and Qualcomm is thereby liable for infringement of the '990 patent pursuant to 35

U.S.C. § 271. Qualcomm have caused damage to Golden, which infringement and damage will continue unless and until Qualcomm is enjoined.

318.    The alleged infringement of Qualcomm identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

319.    On information and belief, Motorola is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Motorola is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '990 patent and Motorola is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Motorola have caused damage to Golden, which infringement

and damage will continue unless and until Motorola is enjoined. **Exhibit P: Claim Chart for Motorola Solutions Inc. (Motorola Inc.)**

320.   On information and belief, Motorola is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series) included without limitation Plaintiff's CMDC's multi-sensor detection system (i.e. home security system) used with CMDC devices for home monitoring; the CMDC's internal or external remote/electrical lock disabler used with CMDC devices for locking and unlocking home doors; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the

CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Motorola is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '990 patent and Motorola is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Motorola have caused damage to Golden, which infringement and damage will continue unless and until Motorola is enjoined.

321.    The alleged infringement of Motorola identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

322.    On information and belief, Panasonic is jointly, directly and/or indirectly infringing at least independent claim 125, and dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone)

included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Panasonic is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '990 patent and Panasonic is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Panasonic have caused damage to Golden, which infringement and damage will continue unless and until Panasonic is enjoined. **Exhibit Q: Claim Chart for Panasonic Corporation**

323.   On information and belief, Panasonic is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone) included without limitation Plaintiff's CMDC's multi-sensor detection system (i.e. home security system) used with CMDC devices for home monitoring; the CMDC's internal or external remote/electrical lock disabler used with CMDC devices for locking and unlocking home doors; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the

dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Panasonic is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '990 patent and Panasonic is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Panasonic have caused damage to Golden, which infringement and damage will continue unless and until Panasonic is enjoined.

324.    The alleged infringement of Panasonic identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

325.    On information and belief, AT&T is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20,

21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing computerized communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that AT&T is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '990 patent and AT&T is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. AT&T have caused damage to Golden, which infringement and damage will continue unless and until AT&T is enjoined.

326.   On information and belief, AT&T is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, offering for sale, or selling_ at least one of Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20,

210

V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7;

Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series;

and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power &

ToughPad FZ-F1 smartphones that includes, without limitation the CMDC's multi-

sensor detection system (i.e. home security system) used with CMDC devices for

home monitoring; the CMDC's internal or external remote/electrical lock disabler

used with CMDC devices for locking and unlocking home doors; the CMDC's

global positioning system (GPS) used with CMDC devices for locating and

tracking; the CMDC's internet used with CMDC devices for mobile internet to fit

the dimensions of a CMDC device; the CMDC's central processing unit used with

CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the

CMDC's radio frequency near-field communication (NFC) used with CMDC

devices for short-range reading of NFC tags; the CMDC's lock disabling

mechanism used with CMDC devices for locking the CMDC device after several

failed attempts to open the CMDC device; and, the CMDC's biometric

identification (i.e. fingerprint, facial) used with CMDC devices for identifying an

authorized user of the CMDC device. As set forth in Golden's preliminary

infringement contentions that AT&T is using, offering for sale, selling and/or

importing of the CMDC device have at a minimum directly and/or indirectly

infringed the '990 patent and AT&T is thereby liable for infringement of the '990

patent pursuant to 35 U.S.C. § 271. AT&T have caused damage to Golden, which infringement and damage will continue unless and until AT&T is enjoined.

327.   The alleged infringement of AT&T identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

328.   On information and belief, Verizon is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing computerized communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Verizon is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '990 patent and Verizon is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Verizon have caused damage to Golden, which infringement and damage will continue unless and until Verizon is enjoined.

329.    On information and belief, Verizon is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, *using, offering for sale, or selling* at least one of Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphones that includes, without limitation the CMDC's multi-sensor detection system (i.e. home security system) used with CMDC devices for home monitoring; the CMDC's internal or external remote/electrical lock disabler used with CMDC devices for locking and unlocking home doors; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the

CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Verizon is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '990 patent and Verizon is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Verizon have caused damage to Golden, which infringement and damage will continue unless and until Verizon is enjoined.

330. The alleged infringement of Verizon identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

331. On information and belief, Sprint is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the

United States by, among other things, using, offering for sale, selling and/or importing computerized communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Sprint is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '990 patent and Sprint is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Sprint have caused damage to Golden, which infringement and damage will continue unless and until Sprint is enjoined.

332.    On information and belief, Sprint is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, *using, offering for sale, or selling* at least one of Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series;

215

and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphones that includes, without limitation the CMDC's multi-sensor detection system (i.e. home security system) used with CMDC devices for home monitoring; the CMDC's internal or external remote/electrical lock disabler used with CMDC devices for locking and unlocking home doors; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Sprint is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '990 patent and Sprint is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Sprint have caused damage to Golden, which infringement and damage will continue unless and until Sprint is enjoined.

333.    The alleged infringement of Sprint identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

334.    On information and belief, T-Mobile is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12, 16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing computerized communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that T-Mobile is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '990 patent and T-Mobile is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. T-Mobile have caused damage to Golden, which infringement and damage will continue unless and until T-Mobile is enjoined.

335.    On information and belief, T-Mobile is jointly, directly and/or indirectly infringing at least independent claim 125, and/or dependent claims 12,

16, 18, 20, 21, 22, 25, 28, 30, 39, 41, 55, 78, 79, 104, 108, 113, 118, 126, 132, 134 & 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, *using, offering for sale, or selling* at least one of Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphones that includes, without limitation the CMDC's multi-sensor detection system (i.e. home security system) used with CMDC devices for home monitoring; the CMDC's internal or external remote/electrical lock disabler used with CMDC devices for locking and unlocking home doors; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking; the CMDC's internet used with CMDC devices for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling

mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that T-Mobile is using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly and/or indirectly infringed the '990 patent and T-Mobile is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. T-Mobile have caused damage to Golden, which infringement and damage will continue unless and until T-Mobile is enjoined.

336.    The alleged infringement of T-Mobile identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

337.    On information and belief, Ford is jointly, directly and/or indirectly infringing at least claim 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's

preliminary infringement contentions that Ford is using the CMDC device have at a minimum directly and/or indirectly infringed the '990 patent and Ford is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Ford have caused damage to Golden, which infringement and damage will continue unless and until Ford is enjoined. **Exhibit R: Claim Chart for Ford Global Technologies, LLC**

338.    On information and belief, Ford is jointly, directly and/or indirectly infringing at least claim 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's multi-sensor detection system (i.e. vehicle security system) used with CMDC devices for vehicle monitoring; the CMDC's internal or external

remote/electrical lock disabler used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Ford is using the CMDC device have at a minimum directly and/or indirectly infringed the '990 patent and Ford is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Ford have caused damage to Golden, which infringement and damage will continue unless and until Ford is enjoined.

339.   The alleged infringement of Ford identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

340.   On information and belief, Fairway Ford is jointly, directly and/or indirectly infringing at least claim 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Fairway Ford is using the CMDC device have at a minimum directly and/or indirectly infringed the '990 patent and Fairway Ford is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Fairway Ford have caused damage to Golden, which infringement and damage will continue unless and until Fairway Ford is enjoined. **Exhibit R: Claim Chart for Fairway Ford Lincoln of Greenville**

341.   On information and belief, Fairway Ford is jointly, directly and/or indirectly infringing at least claim 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7

series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's multi-sensor detection system (i.e. vehicle security system) used with CMDC devices for vehicle monitoring; the CMDC's internal or external remote/electrical lock disabler used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading

of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Fairway Ford is using the CMDC device have at a minimum directly and/or indirectly infringed the '990 patent and Fairway Ford is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Fairway Ford have caused damage to Golden, which infringement and damage will continue unless and until Fairway Ford is enjoined.

342.   The alleged infringement of Fairway Ford identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

343.   On information and belief, GM is jointly, directly and/or indirectly infringing at least claim 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that GM is using of the CMDC device have

at a minimum directly and/or indirectly infringed the '990 patent and GM is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. GM have caused damage to Golden, which infringement and damage will continue unless and until GM is enjoined. **Exhibit S: Claim Chart for General Motors Company**

344.   On information and belief, GM is jointly, directly and/or indirectly infringing at least claim 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone communication devices that includes, without limitation the CMDC's multi-sensor detection system (i.e. vehicle security system) used with CMDC devices for vehicle monitoring; the CMDC's internal or external remote/electrical lock disabler used with CMDC devices for locking and unlocking

vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that GM is using the CMDC device have at a minimum directly and/or indirectly infringed the '990 patent and GM is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. GM have caused damage to Golden, which infringement and damage will continue unless and until GM is enjoined.

345.    The alleged infringement of GM identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering

the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

346.   On information and belief, Whitaker Chevrolet is jointly, directly and/or indirectly infringing at least claim 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing computerized communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that Whitaker Chevrolet is using the CMDC device have at a minimum directly and/or indirectly infringed the '990 patent and Whitaker Chevrolet is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Whitaker Chevrolet have caused damage to Golden, which infringement and damage will continue unless and until Whitaker Chevrolet is enjoined. **Exhibit S: Claim Chart for Kevin Whitaker Chevrolet**

347.   On information and belief, Whitaker Chevrolet is jointly, directly and/or indirectly infringing at least claim 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone

XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone without limitation the CMDC's multi-sensor detection system (i.e. vehicle security system) used with CMDC devices for vehicle monitoring; the CMDC's internal or external remote/electrical lock disabler used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after

several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Whitaker Chevrolet is using the CMDC device have at a minimum directly and/or indirectly infringed the '990 patent and Whitaker Chevrolet is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Whitaker Chevrolet have caused damage to Golden, which infringement and damage will continue unless and until Whitaker Chevrolet is enjoined.

348.   The alleged infringement of Whitaker Chevrolet identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

349.   On information and belief, FCA is jointly, directly and/or indirectly infringing at least claim 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, communications devices (i.e. smartphones, laptops, tablets, smartwatches) including without limitation the CMDC device. As set forth in Golden's preliminary infringement contentions that FCA is using the CMDC device have at

a minimum directly and/or indirectly infringed the '990 patent and FCA is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. FCA have caused damage to Golden, which infringement and damage will continue unless and until FCA is enjoined. **Exhibit T: Claim Chart for FCA US LLC**

350.   On information and belief, FCA is jointly, directly and/or indirectly infringing at least claim 125 of the '990 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, _using, with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone without limitation the CMDC's multi-sensor detection system (i.e. vehicle security system) used with CMDC devices for vehicle monitoring; the CMDC's internal or external remote/electrical lock disabler used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine;

the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that FCA is using, the CMDC device have at a minimum directly and/or indirectly infringed the '990 patent and FCA is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. FCA have caused damage to Golden, which infringement and damage will continue unless and until FCA is enjoined.

351.   The alleged infringement of FCA identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a

permanent injunction is warranted and such a remedy would be in the public

interest.

352.   On information and belief, Big O is jointly, directly and/or indirectly

infringing at least claim 125 of the '990 patent in this judicial district and

elsewhere in South Carolina and the United States by, among other things, using,

communications devices (i.e. smartphones, laptops, tablets, smartwatches)

including without limitation the CMDC device. As set forth in Golden's

preliminary infringement contentions that Big O is using the CMDC device have at

a minimum directly and/or indirectly infringed the '990 patent and Big O is

thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Big

O have caused damage to Golden, which infringement and damage will continue

unless and until Big O is enjoined. **Exhibit T: Claim Chart for Big O Dodge**

**Jeep RAM**

353.   On information and belief, Big O is jointly, directly and/or indirectly

infringing at least claim 125 of the '990 patent in this judicial district and

elsewhere in South Carolina and the United States by, among other things, _using,_

_with its vehicles at least one of the alleged infringing devices_ i.e. Apple's iPhone 7

series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series,

iPhone 11 series, & Apple Watch series 3, 4, & 5; Samsung's Galaxy S10 series,

Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, &  Samsung

Gear S3 classic and Galaxy Watch Active2 series; LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7; Motorola's Moto Z2, Z3, & Z4 series, Motorola One series, & Moto G7 series; and, Panasonic's TOUGHBOOK 31 Laptop, ELUGA C series, Panasonic Power & ToughPad FZ-F1 smartphone, without limitation the CMDC's multi-sensor detection system (i.e. vehicle security system) used with CMDC devices for vehicle monitoring; the CMDC's internal or external remote/electrical lock disabler used with CMDC devices for locking and unlocking vehicle doors; the CMDC's remote ignition start/stop used with CMDC devices for starting and stopping the vehicle's engine; the CMDC's remote operating systems controls used with CMDC devices for operating the heating and cooling controls; the CMDC's global positioning system (GPS) used with CMDC devices for locating and tracking the vehicle; the CMDC's internet used with CMDC devices for mobile internet (i.e. the connected vehicle) to fit the dimensions of a CMDC device; the CMDC's central processing unit used with CMDC devices for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's radio frequency near-field communication (NFC) used with CMDC devices for short-range reading of NFC tags; the CMDC's lock disabling mechanism used with CMDC devices for locking the CMDC device after several failed attempts to open the CMDC device; and, the CMDC's biometric identification (i.e. fingerprint, facial) used with CMDC devices for identifying an

authorized user of the CMDC device. As set forth in Golden's preliminary infringement contentions that Big O is using, the CMDC device have at a minimum directly and/or indirectly infringed the '990 patent and Big O is thereby liable for infringement of the '990 patent pursuant to 35 U.S.C. § 271. Big O have caused damage to Golden, which infringement and damage will continue unless and until Big O is enjoined.

354.    The alleged infringement of Big O identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

## COUNT V
### (Infringement of the '891 Patent)

355.    Golden realleges and incorporates herein the allegations set forth in Paragraphs 1-354.

356.    Plaintiff alleges that at least one of the Defendants named in this complaint has infringed at least of independent claims 11, 23, & 44, and/or dependent claims 47, 48, 49, 50, 51 & 53 of the '891 patent that covers Plaintiff's communication, monitoring, detecting and controlling (CMDC) device and vehicles adapted for and/or equipped with at least one stall, stop, or vehicle slow-down system (SSVSS). **Exhibit X: Claim Chart for the '891 Patent**

357.   On information and belief, Ford is jointly, directly and/or indirectly infringing at least one of independent claims 11, 23, & 44 and/or dependent claims 47, 48, 49, 50, 51 & 53 of the '891 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing pre-programmed stall, stop, or vehicle slowdown systems (PSSVSS)  that includes, without limitation a PSSVSS for an autonomous or driverless vehicle; a PSSVSS for vehicle pre-crash forward acceleration; a PSSVSS for vehicle pre-crash reverse acceleration; a PSSVSS for vehicle lane departure; a PSSVSS for vehicle stabilization; a PSSVSS for vehicle unintended acceleration; a PSSVSS for vehicle moved outside a designated perimeter; a PSSVSS for traffic sign recognition; a PSSVSS for intelligent speed limiter, or, a PSSVSS for vehicle adapted cruise control. As set forth in Golden's preliminary infringement contentions that Ford is using, offering for sale, selling and/or importing of the hardware and software for the CMDC device have at a minimum directly and/or indirectly infringed the '891 patent and Ford is thereby liable for infringement of the '891 patent pursuant to 35 U.S.C. § 271. Ford have caused damage to Golden, which infringement and damage will continue unless and until Ford is enjoined. **Exhibit R: Claim Chart for Ford Global Technologies, LLC**

358.   The alleged infringement of Ford identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering

the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

359.   On information and belief, Fairway Ford is jointly, directly and/or indirectly infringing at least one of independent claims 11, 23, & 44 and/or dependent claims 47, 48, 49, 50, 51 & 53 of the '891 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing pre-programmed stall, stop, or vehicle slowdown systems (PSSVSS) that includes, without limitation a PSSVSS for an autonomous or driverless vehicle; a PSSVSS for vehicle pre-crash forward acceleration; a PSSVSS for vehicle pre-crash reverse acceleration; a PSSVSS for vehicle lane departure; a PSSVSS for vehicle stabilization; a PSSVSS for vehicle unintended acceleration; a PSSVSS for vehicle moved outside a designated perimeter; or, a PSSVSS for vehicle adapted cruise control. As set forth in Golden's preliminary infringement contentions that Fairway Ford is using, offering for sale, selling and/or importing of the hardware and software for the CMDC device have at a minimum directly and/or indirectly infringed the '891 patent and Fairway Ford is thereby liable for infringement of the '891 patent pursuant to 35 U.S.C. § 271. Fairway Ford have caused damage to Golden, which infringement

and damage will continue unless and until Fairway Ford is enjoined. **Exhibit R: Claim Chart for Fairway Ford Lincoln of Greenville**

360.  The alleged infringement of Fairway Ford identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

361.  On information and belief, GM is jointly, directly and/or indirectly infringing at least independent claim 11 and/or dependent claims 12, 13, 14, 15, 16, 17, 18 &19 of the '891 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing computerized communications devices (i.e. CMDC personal computers, desktops interconnected to GM/OnStar's STOLEN VEHICLE SYSTEM) including without limitation the CMDC device remote means of stalling, stopping, or slowing a vehicle by way of cellular, satellite, radio-frequency, internet, electromagnetic pulse, electrostatic discharge, or microwave beam. As set forth in Golden's preliminary infringement contentions that GM is using, offering for sale, selling and/or importing of the hardware and software for the CMDC device interconnected to a vehicle for stalling, stopping, and/or slowing the vehicle have at a minimum directly and/or indirectly infringed the '891 patent

and GM is thereby liable for infringement of the '891 patent pursuant to 35 U.S.C. § 271. GM have caused damage to Golden, which infringement and damage will continue unless and until GM is enjoined. **Exhibit S: Claim Chart for General Motors Company**

362.   On information and belief, GM is jointly, directly and/or indirectly infringing at least one of independent claims 11, 23, & 44 and/or dependent claims 47, 48, 49, 50, 51 & 53 of the '891 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing pre-programmed stall, stop, or vehicle slowdown systems (PSSVSS)  that includes, without limitation a PSSVSS for an autonomous or driverless vehicle; a PSSVSS for vehicle pre-crash forward acceleration; a PSSVSS for vehicle pre-crash reverse acceleration; a PSSVSS for vehicle lane departure; a PSSVSS for vehicle stabilization; a PSSVSS for vehicle unintended acceleration; a PSSVSS for vehicle moved outside a designated perimeter; or, a PSSVSS for vehicle adapted cruise control. As set forth in Golden's preliminary infringement contentions that GM is using, offering for sale, selling and/or importing of the hardware and software for the CMDC device have at a minimum directly and/or indirectly infringed the '891 patent and GM is thereby liable for infringement of the '891 patent pursuant to 35 U.S.C. § 271. GM have caused

damage to Golden, which infringement and damage will continue unless and until GM is enjoined.

363.   The alleged infringement of GM identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

364.   On information and belief, Whitaker Chevrolet is jointly, directly and/or indirectly infringing at least independent claim 11 and/or dependent claims 12, 13, 14, 15, 16, 17, 18 &19 of the '891 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing computerized communications devices (i.e. CMDC personal computers, desktops interconnected to GM/OnStar's STOLEN VEHICLE SYSTEM) including without limitation the CMDC device remote means of stalling, stopping, or slowing a vehicle by way of cellular, satellite, radio-frequency, internet, electromagnetic pulse, electrostatic discharge, or microwave beam. As set forth in Golden's preliminary infringement contentions that Whitaker Chevrolet is using, offering for sale, selling and/or importing of the hardware and software for the CMDC device interconnected to a vehicle for stalling, stopping, and/or slowing the vehicle have at a minimum directly and/or

indirectly infringed the '891 patent and Whitaker Chevrolet is thereby liable for infringement of the '891 patent pursuant to 35 U.S.C. § 271. Whitaker Chevrolet have caused damage to Golden, which infringement and damage will continue unless and until Whitaker Chevrolet is enjoined. **Exhibit S: Claim Chart for Kevin Whitaker Chevrolet**

365.    On information and belief, Whitaker Chevrolet is jointly, directly and/or indirectly infringing at least one of independent claims 11, 23, & 44 and/or dependent claims 47, 48, 49, 50, 51 & 53 of the '891 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing pre-programmed stall, stop, or vehicle slowdown systems (PSSVSS) that includes, without limitation a PSSVSS for an autonomous or driverless vehicle; a PSSVSS for vehicle pre-crash forward acceleration; a PSSVSS for vehicle pre-crash reverse acceleration; a PSSVSS for vehicle lane departure; a PSSVSS for vehicle stabilization; a PSSVSS for vehicle unintended acceleration; a PSSVSS for vehicle moved outside a designated perimeter; or, a PSSVSS for vehicle adapted cruise control. As set forth in Golden's preliminary infringement contentions that Whitaker Chevrolet is using, offering for sale, selling and/or importing of the hardware and software for the CMDC device have at a minimum directly and/or indirectly infringed the '891 patent and Whitaker Chevrolet is thereby liable for infringement of the '891 patent

pursuant to 35 U.S.C. § 271. Whitaker Chevrolet have caused damage to Golden, which infringement and damage will continue unless and until Whitaker Chevrolet is enjoined.

366.    The alleged infringement of Whitaker Chevrolet identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

367.    On information and belief, FCA is jointly, directly and/or indirectly infringing at least one claim of the '891 patent one of independent claims 11, 23, & 44 and/or dependent claims 47, 48, 49, 50, 51 & 53 of the '891 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing pre-programmed stall, stop, or vehicle slowdown systems (PSSVSS) that includes, without limitation a PSSVSS for an autonomous or driverless vehicle; a PSSVSS for vehicle pre-crash forward acceleration; a PSSVSS for vehicle pre-crash reverse acceleration; a PSSVSS for vehicle lane departure; a PSSVSS for vehicle stabilization; a PSSVSS for vehicle unintended acceleration; a PSSVSS for vehicle moved outside a designated perimeter; or, a PSSVSS for vehicle adapted cruise control. As set forth in Golden's preliminary infringement contentions that FCA is

using, offering for sale, selling and/or importing of the hardware and software for the CMDC device have at a minimum directly and/or indirectly infringed the '891 patent and FCA is thereby liable for infringement of the '891 patent pursuant to 35 U.S.C. § 271. FCA have caused damage to Golden, which infringement and damage will continue unless and until FCA is enjoined. **Exhibit T: Claim Chart for FCA US LLC**

368.   The alleged infringement of FCA identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

369.   On information and belief, Big O is jointly, directly and/or indirectly infringing at least one of independent claims 11, 23, & 44 and/or dependent claims 47, 48, 49, 50, 51 & 53 of the '891 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, using, offering for sale, selling and/or importing pre-programmed stall, stop, or vehicle slowdown systems (PSSVSS)  that includes, without limitation a PSSVSS for an autonomous or driverless vehicle; a PSSVSS for vehicle pre-crash forward acceleration; a PSSVSS for vehicle pre-crash reverse acceleration; a PSSVSS for vehicle lane departure; a PSSVSS for vehicle stabilization; a PSSVSS for vehicle unintended

acceleration; a PSSVSS for vehicle moved outside a designated perimeter; or, a PSSVSS for vehicle adapted cruise control. As set forth in Golden's preliminary infringement contentions that Big O is using, offering for sale, selling and/or importing of the hardware and software for the CMDC device have at a minimum directly and/or indirectly infringed the '891 patent and Big O is thereby liable for infringement of the '891 patent pursuant to 35 U.S.C. § 271. Big O have caused damage to Golden, which infringement and damage will continue unless and until Big O is enjoined. **Exhibit T: Claim Chart for Big O Dodge Jeep RAM**

370.   The alleged infringement of Big O identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

## COUNT VI
### (Infringement of the '497 Patent)

371.   Golden realleges and incorporates herein the allegations set forth in Paragraphs 1-370.

372.   Plaintiff alleges that at least one of the Defendants named in this complaint has infringed at least independent claim 1, and/or dependent claims 2-6 of the '497 patent that covers Plaintiff's monitoring equipment, comprising at least one of disabling lock, detector case, CMDC device (i.e. new and improved cell

243

phone), biometric fingerprint, GPS connection, internet connection, or central processing unit (CPU). **Exhibit Y: Claim Chart for the '497 Patent**

373.   On information and belief, Apple is jointly, directly and/or indirectly infringing at least independent claim 1, and/or dependent claims 2-6 of the '497 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. iPhone 7 series, iPhone 8 series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, & Apple Watch series 3, 4, & 5) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Apple is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '497 patent and Apple is thereby liable for infringement of the '497 patent pursuant to 35 U.S.C. § 271. Apple have caused damage to Golden, which infringement and damage will continue unless and until Apple is enjoined. **Exhibit L: Claim Chart for Apple Inc.**

374.   On information and belief, Apple is jointly, directly and/or indirectly infringing at least independent claim 1, and/or dependent claims 2-6 of the '497 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. iPhone 7 series, iPhone 8

244

series, iPhone X series, iPhone XS series, iPhone XR series, iPhone 11 series, &

Apple Watch series 3, 4, & 5) included without limitation Plaintiff's CMDC as

monitoring equipment that is interconnected to a lock disabler for locking and

unlocking doors; the CMDC's global positioning system (GPS) is used for locating

and tracking; the CMDC's internet is used for mobile internet to fit the dimensions

of a CMDC device; the CMDC's central processing unit is used for mobile

application processing i.e. system-on-a-chip (SoC); the CMDC's fingerprint

biometric lock disabler is used for identification and for disabling a lock after

multiple failed attempts to unlock the CMDC device; and, the CMDC's

interchangeable sensors are used for chemical, biological, and radiological

detection.  As set forth in Golden's preliminary infringement contentions that

Apple is making, using, offering for sale, selling and/or importing of the CMDC

device have at a minimum directly infringed the '497 patent and Apple is thereby

liable for infringement of the '497 patent pursuant to 35 U.S.C. § 271. Apple have

caused damage to Golden, which infringement and damage will continue unless

and until Apple is enjoined.

375.   The alleged infringement of Apple identified in this Count has caused

irreparable injury to Golden for which remedies at law are inadequate. Considering

the balance of the hardships between the parties, a remedy in equity, such as a

permanent injunction is warranted and such a remedy would be in the public interest.

376.    On information and belief, Samsung is jointly, directly and/or indirectly infringing at least independent claim 1, and/or dependent claims 2-6 of the '497 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Samsung is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '497 patent and Samsung is thereby liable for infringement of the '497 patent pursuant to 35 U.S.C. § 271. Samsung have caused damage to Golden, which infringement and damage will continue unless and until Samsung is enjoined.

**Exhibit M: Claim Chart for Samsung Electronics, USA.**

377.    On information and belief, Samsung is jointly, directly and/or indirectly infringing at least independent claim 1, and/or dependent claims 2-6 of the '497 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling

and/or importing computerized communications devices (i.e. Samsung's Galaxy S10 series, Galaxy Note 8, 9, & 10 series, Galaxy Note 8S, 9S, & 10S series, & Samsung Gear S3 classic and Galaxy Watch Active2 series) included without limitation Plaintiff's the CMDC as monitoring equipment that is interconnected to a lock disabler for locking and unlocking doors; the CMDC's global positioning system (GPS) is used for locating and tracking; the CMDC's internet is used for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit is used for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's fingerprint biometric lock disabler is used for identification and for disabling a lock after multiple failed attempts to unlock the CMDC device; and, the CMDC's interchangeable sensors are used for chemical, biological, and radiological detection.  As set forth in Golden's preliminary infringement contentions that Samsung is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '497 patent and Samsung is thereby liable for infringement of the '497 patent pursuant to 35 U.S.C. § 271. Samsung have caused damage to Golden, which infringement and damage will continue unless and until Samsung is enjoined.

378.   The alleged infringement of Samsung identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity,

such as a permanent injunction is warranted and such a remedy would be in the public interest.

379.   On information and belief, LG is jointly, directly and/or indirectly infringing at least independent claim 1, and/or dependent claims 2-6 of the '497 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. LG's V20, V30, V35, V50, LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7)) included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that LG is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '497 patent and LG is thereby liable for infringement of the '497 patent pursuant to 35 U.S.C. § 271. LG have caused damage to Golden, which infringement and damage will continue unless and until LG is enjoined. **Exhibit N: Claim Chart for LG Electronics, USA, Inc.**

380.   On information and belief, LG is jointly, directly and/or indirectly infringing at least independent claim 1, and/or dependent claims 2-6 of the '497 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling and/or importing computerized communications devices (i.e. LG's V20, V30, V35, V50,

LG G6, LG G7, LG G8, LG & Watch Sport, LG Watch 7)) included without limitation Plaintiff's CMDC as monitoring equipment that is interconnected to a lock disabler for locking and unlocking doors; the CMDC's global positioning system (GPS) is used for locating and tracking; the CMDC's internet is used for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit is used for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's fingerprint biometric lock disabler is used for identification and for disabling a lock after multiple failed attempts to unlock the CMDC device; and, the CMDC's interchangeable sensors are used for chemical, biological, and radiological detection.  As set forth in Golden's preliminary infringement contentions that LG is making, using, offering for sale, selling and/or importing of the CMDC device have at a minimum directly infringed the '497 patent and LG is thereby liable for infringement of the '497 patent pursuant to 35 U.S.C. § 271. LG have caused damage to Golden, which infringement and damage will continue unless and until LG is enjoined.

381.   The alleged infringement of LG identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity, such as a permanent injunction is warranted and such a remedy would be in the public interest.

382.    On information and belief, Qualcomm is jointly, directly and/or indirectly infringing at least independent claim 1, and/or dependent claims 2-6 of the '497 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling certain processing devices as Central Processing Units (i.e. Qualcomm's Snapdragon 5 Series, 6 Series, 7 Series, & 8 Series) for system-on-a-chip application processing for at least Apple, Samsung, LG, Motorola, and Panasonic; included without limitation Plaintiff's CMDC devices. As set forth in Golden's preliminary infringement contentions that Qualcomm is making, using, offering for sale, selling certain processing devices. The CMDC device have at a minimum directly infringed the '497 patent and Qualcomm is thereby liable for infringement of the '497 patent pursuant to 35 U.S.C. § 271. Qualcomm have caused damage to Golden, which infringement and damage will continue unless and until Qualcomm is enjoined. **Exhibit O: Claim Chart for Qualcomm Inc.**

383.    On information and belief, Qualcomm is jointly, directly and/or indirectly infringing at least independent claim 1, and/or dependent claims 2-6 of the '497 patent in this judicial district and elsewhere in South Carolina and the United States by, among other things, making, using, offering for sale, selling certain processing devices as Central Processing Units (i.e. Qualcomm's Snapdragon 5 Series, 6 Series, 7 Series, & 8 Series) for system-on-a-chip

application processing for at least Apple, Samsung, LG, Motorola, and Panasonic; included without limitation Plaintiff's CMDC as monitoring equipment that is interconnected to a lock disabler for locking and unlocking doors; the CMDC's global positioning system (GPS) is used for locating and tracking; the CMDC's internet is used for mobile internet to fit the dimensions of a CMDC device; the CMDC's central processing unit is used for mobile application processing i.e. system-on-a-chip (SoC); the CMDC's fingerprint biometric lock disabler is used for identification and for disabling a lock after multiple failed attempts to unlock the CMDC device; and, the CMDC's interchangeable sensors are used for chemical, biological, and radiological detection.  As set forth in Golden's preliminary infringement contentions that Qualcomm is making, using, offering for sale, selling certain processing devices. The CMDC device have at a minimum directly infringed the '497 patent and Qualcomm is thereby liable for infringement of the '497 patent pursuant to 35 U.S.C. § 271. Qualcomm have caused damage to Golden, which infringement and damage will continue unless and until Qualcomm is enjoined.

384.   The alleged infringement of Qualcomm identified in this Count has caused irreparable injury to Golden for which remedies at law are inadequate. Considering the balance of the hardships between the parties, a remedy in equity,

such as a permanent injunction is warranted and such a remedy would be in the public interest.

## PRAYER FOR RELIEF

Wherefore, Golden respectfully requests that this Court enter:

A.    A judgment in favor of Golden that each defendant has infringed at least one of the '287 Patent, the '439 Patent, the 189 Patent, the '990 Patent, the '891 Patent and the '497 Patent as aforesaid;

B.    A permanent injunction enjoining each defendant, its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents and all others acting in active concert or privity therewith from direct, indirect and/or joint infringement of the '287, '439, '189, '990, '891, and '497 patents as aforesaid pursuant to 35 U.S.C. § 283;

C.    A judgment and order requiring each defendant to pay Golden its damages with pre- and post-judgment interest thereon pursuant to 35 U.S.C. § 284;

D.    Any and all further relief to which the Court may deem Golden entitled.

## DEMAND FOR JURY TRIAL

Golden requests a trial by jury on all issues so triable by right pursuant to Fed. R. Civ. P. 38.

Respectfully submitted,

S/ *Larry Golden*    10/14/19

Larry Golden, Petitioner, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

(H) 864-288-5605 / (M) 864-992-7104

atpg-tech@charter.net